**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JANE DOE, individually and on behalf of similarly situated individuals, | |
| Plaintiff, | Case No. 21-cv-6624 |
| v. | Hon. Gary S. Feinerman |
| FENIX INTERNET, LLC, a Delaware limited liability company, | |
| Defendant. | |

**<u>DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

BACKGROUND AND RELEVANT ALLEGATIONS ................................................... 3

      I.     OnlyFans, Fenix International and Fenix Internet ................................. 3

      II.    Plaintiff "Jane Doe" Signs Up For and Earns Money on OnlyFans ...................... 4

      III.   Plaintiff's Specific Allegations Underlying this Action ........................................ 5

ARGUMENT ..................................................................................................................... 6

      I.     Fenix Internet Is Not Subject to Personal Jurisdiction in Illinois ........................... 6

           A.    Fenix Internet Is Not Subject to General Jurisdiction in Illinois ............... 7

           B.    Fenix Internet Is Not Subject to Specific Jurisdiction in Illinois............... 8

      II.    The Courts of England and Wales Have Exclusive Jurisdiction over Plaintiff's Claims ........................................................................................................ 11

      III.   Plaintiff's Section 15(c) Claim Fails as a Matter of Law ..................................... 14

CONCLUSION .................................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

*Abbott Labs. v. Takeda Pharm. Co.*,
   476 F.3d 421 (7th Cir. 2007) .................................................................................11

*Al Haj v. Pfizer Inc.*,
   338 F. Supp. 3d 741 (N.D. Ill. 2018) ...................................................................7

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
   571 U.S. 49 (2013)..........................................................................................11, 12

*Avila v. CitiMortgage, Inc.*,
   801 F.3d 777 (7th Cir. 2015) ...............................................................................14

*Baxter Int'l Inc. v. AXA Versicherung AG*,
   908 F. Supp. 2d 920 (N.D. Ill. 2012) .................................................................11

*BNP Paribas SA v. Anchorage Capital Europe LLP*
   [2013] EWHC 3073 (Comm), 2013 WL 5336632 ............................................12

*Bray v. Lathem Time Co.*, No. 19-CV-3157,
   2020 WL 1492742 (C.D. Ill. Mar. 27, 2020).....................................................9, 10

*Brook v. McCormley*,
   873 F.3d 549 (7th Cir. 2017) ...........................................................................6, 7, 8

*Catlin Syndicate Ltd v. Amec Foster Wheeler USA Corp*
   [2020] EWHC 2530 (Comm), 2020 WL 05713769 .............................................12

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)...............................................................................................7

*Donohue v. Armco Inc.*
   [2001] UKHL 64, 2001 WL 1479758 ..............................................................12, 13

*Dr. Robert L. Meinders, D.C., Ltd. v. United Healthcare Servs., Inc.*,
   7 F.4th 555 (7th Cir. 2021) ..................................................................................11

*Eastern Pacific Chartering Inc v. Pola Maritime Ltd*
   [2021] EWHC 1707 (Comm)................................................................................13

*Gullen v. Facebook.com, Inc.*, No. 15-CV-7681,
   2016 WL 245910 (N.D. Ill. Jan. 21, 2016)...........................................................10

*Jackson v. Payday Fin., LLC*,
   764 F.3d 765 (7th Cir. 2014) ................................................................................11

*Kipp v. Ski Enter. Corp. of Wisconsin*,
    783 F.3d 695 (7th Cir. 2015) ........................................................7

*Martinez v. Bloomberg LP*,
    740 F.3d 211 (2d Cir. 2014)....................................................12, 13

*Matlin v. Spin Master Corp.*,
    921 F.3d 701 (7th Cir. 2019) ....................................................6, 7

*McGoveran v. Amazon Web Servs., Inc.*,
    488 F. Supp. 3d 714 (S.D. Ill. 2020).............................................10

*Muniz v. Fenix Int'l Ltd.*, No. 1:20-CV-03200-LMM,
    2021 WL 3417581 (N.D. Ga. June 28, 2021) ..............................12, 13

*N. Grain Mktg., LLC v. Greving*,
    743 F.3d 487 (7th Cir. 2014) ........................................................8

*Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*,
    338 F.3d 773 (7th Cir. 2003) ........................................................7

*Salkauskaite v. Sephora USA, Inc.*, No. 18-CV-08507,
    2020 WL 2796122 (N.D. Ill. May 30, 2020) ................................9, 10

*Vance v. Microsoft Corp.*,
    534 F. Supp. 3d 1301 (W.D. Wash. 2021)......................................14

*Walden v. Fiore*,
    571 U.S. 277 (2014)...............................................................8, 10

## Other Authorities

Fed.R.Civ.P. 12(b)(2)......................................................................11

Fed.R.Civ.P. 12(b)(6)....................................................................2, 6

## **INTRODUCTION**

Plaintiff's complaint must be dismissed in its entirety for two separate and independent reasons. **First**, Defendant is not subject to jurisdiction in Illinois. **Second**, *even if* Defendant were subject to jurisdiction in Illinois, "Jane Doe"[1] contractually agreed to litigate exclusively overseas. Thus, at best, Plaintiff brought her case against the wrong entity and in the wrong country. Therefore, as set forth below, her attempts to litigate these claims in Illinois by ignoring blackletter procedural law as well as the terms of the controlling contract must be rejected.

Plaintiff—whoever she is—is purportedly an OnlyFans.com ("OnlyFans") "content creator." OnlyFans is operated by *non-party* Fenix International Limited ("Fenix International"). Fenix International is the U.K.-based parent company of Defendant Fenix Internet, LLC ("Fenix Internet"), a Delaware entity that processes payments on behalf of Fenix International. Plaintiff, as a content creator, and pursuant to the terms of her contractual relationship with OnlyFans, earns money by posting and selling her videos to "fans." As such, and during a point in time during her use of OnlyFans's platform, Fenix International required Plaintiff, if she wished to remain a content creator, to verify her identity and age through a third-party vendor (to prove she was not a minor posting illegal content). As part of that process, Plaintiff alleges that she submitted a "selfie" and a photo of her driver's license, and that her supposed "biometrics" were extracted from those materials. As such, Plaintiff complains that those safeguards, which she voluntarily undertook, violated the Illinois Biometric Information Privacy Act ("BIPA")—not so.

Indeed, Plaintiff wrongly alleges Fenix *Internet* is a private entity in possession of her biometrics, asserting three BIPA claims against it: a Section 15(a) claim for allegedly lacking a

---

[1] Plaintiff filed her Complaint under a pseudonym and this motion was prepared without knowledge of her identity, which Plaintiff's counsel has agreed to provide to defense counsel in the coming days. While not part of this motion, Defendant believes that Plaintiff cannot meet her burden under the legal standard to sue under a pseudonym and reserves all arguments, rights, and remedies with respect to that issue.

publicly available retention policy (Count I); a Section 15(c) claim for supposedly "profiting" from her biometrics (Count II); and a Section 15(e) claim for purportedly failing to employ reasonable measures in storing her biometrics (Count III).

Be that as it may, Illinois cannot exercise personal jurisdiction over Fenix Internet for these claims. As a Delaware entity with its principal place of business in Delaware, Fenix Internet is certainly not "at home" in Illinois and thus is not subject to general jurisdiction here. Nor is there a basis to exercise specific jurisdiction. Plaintiff's claims do not arise out of or relate to any contacts Fenix Internet has with Illinois, as it neither operates the OnlyFans website nor plays a role in conducting the age-verification process on which her claims are based. In fact, Fenix Internet does not use or interact with purported biometric information at all.

However, even if there were personal jurisdiction over Fenix Internet (there is not), it would not matter, as Plaintiff contractually agreed that the courts of England and Wales have *exclusive jurisdiction* over any claim arising out of her use of OnlyFans. The broadly worded exclusive-jurisdiction provision obviously covers the BIPA claims she asserts. Further, the exclusive-jurisdiction provision is prima facie valid and enforceable, and Plaintiff has not, and cannot, evade this aspect of the OnlyFans agreement she has, and continues to, benefit from.

Finally, should this Court keep this case (it should not), there are dispositive problems with Plaintiff's claims as alleged. Indeed, while all three claims will fail on the merits in due course, Plaintiff's Section 15(c) claim warrants immediate dismissal under Rule 12(b)(6). Essentially, Plaintiff alleges that Fenix Internet profits from her biometric information because it uses that information to verify her identity. This interpretation is contrary to the statute's plain meaning—which intends to cover transactions that involve sharing or providing access to the biometric information itself—and would turn any business that uses biometric information in some way into

2

one that profits from biometric information. That is not what the General Assembly intended in enacting Section 15(c), and so Plaintiff's theory must be rejected, and her claim dismissed.

## BACKGROUND AND RELEVANT ALLEGATIONS

### I. OnlyFans, Fenix International and Fenix Internet

OnlyFans is a popular international content-sharing and social media website, which allows "content creators" to post material for sale to "fans." ECF 1-1, Plaintiff's Class Action Complaint ("Compl.") ¶ 14. Using OnlyFans, content creators can sell content to a large network of fans worldwide on a subscription-based or one-off transactional basis. *Id.* ¶ 15. As of January 2022, more than 370,000 content creators use OnlyFans and access to its approximately 35 million active fans to earn income. Ex. 1, Declaration of Lee Taylor ("Decl.") ¶ 8.

OnlyFans content creators may post a variety of content on the platform, including adult content. Compl. ¶ 19. However, in order to verify that individuals posting content to OnlyFans are not minors, content creators must submit to an age-verification process. *Id.* ¶ 20. And in order to use the website at all, all users (including content creators and fans) must agree to the Terms of Service during the sign-up process. Ex. A to Decl. (Terms of Service), 7.g.[2]

OnlyFans is owned and operated by non-party Fenix International from its London offices. *See* Decl. ¶ 6. Fenix International is incorporated and registered in England and Wales, with its principal place of business in London. *Id.* ¶ 5. Plaintiff, however, has not named Fenix International as a party to this lawsuit, and instead alleges (incorrectly) that Defendant Fenix Internet is the "United States based operator of [OnlyFans]." Compl. ¶ 16.

Fenix Internet is a Delaware limited liability company with its principal place of business in Delaware, and it has a single member—London-based Fenix International. Decl. ¶¶ 1, 3–4.

---

[2] OnlyFans's Terms of Service include seven different sections. Citations to "Terms of Service" herein refer to the "Terms of Use for All Users" section unless otherwise specified.

Fenix Internet facilitates payments for transactions on the OnlyFans website between content creators and fans.  *Id.* ¶ 9.  It does not use or require biometric data to provide this service, and it does not otherwise collect, possess, or store such information.  *Id.* ¶¶ 11-12.  It does not engage in marketing, sales, or commercial activity targeted at Illinois residents.  *Id.* ¶ 15.  Its *only* contacts with Illinois arise from Fenix International's relationship with residents of the State and, in any event, are unrelated to the BIPA violations alleged here.

## II.     Plaintiff "Jane Doe" Signs Up For and Earns Money on OnlyFans

Plaintiff alleges that she registered and completed a non-biometric identification verification process to become a content creator on OnlyFans in "summer 2019."  *See* Compl. ¶ 28.  At that point, as referenced above, in order to use OnlyFans's platform to attempt to make money, Plaintiff affirmatively assented to be bound by the website's Terms of Service.[3]  *See, e.g.*, Ex. A to Decl., § 7.g; *id.*, Terms of Use for Creators, § 7 ("Every Creator is bound personally by the Terms of Service.");  Decl. ¶¶ 18, 20.  The Terms of Service outline the parties' respective rights, and a "Business User," such as Plaintiff, may not run his or her business on the OnlyFans platform without agreeing to the Terms of Service.  Ex. A to Decl., Terms of Use for Creators, § 7.

The OnlyFans Terms of Service contain choice-of-law and exclusive-jurisdiction clauses:

**Business Users – Law**:
If you are a business User [such as Plaintiff], your agreement with us is governed by English law and English law will apply to (i) any claim that you have arising out of or in connection with your agreement with us or your use of OnlyFans, and (ii) any claim that we have arising out of or in connection with your agreement with us or your use of OnlyFans (including, in both cases non-contractual disputes or claims), without regard to conflict of law provisions.

---

[3] Because Plaintiff filed suit using a pseudonym and Fenix Internet has not yet been informed of her identity, it is currently unable to verify that Plaintiff has, in fact, used OnlyFans and agreed to its Terms of Service. It is only reasonable, for present purposes, to credit her allegation that she is indeed an OnlyFans content creator who has agreed to the Terms of Service. Fenix Internet reserves the right to respond in its reply brief to any arguments that require knowledge of Plaintiff's identity should she make them in her opposition.

4

**Business Users – where claims must be brought**:
If you are a business User [such as Plaintiff], you and we agree that the courts of England and Wales shall have exclusive jurisdiction to resolve any dispute or claim (including non-contractual disputes or claims) which you have or which we have arising out of or in connection with your agreement with us (including its subject matter or formation) or your use of OnlyFans.[4]

*Id.*, § 16.b.

## III. Plaintiff's Specific Allegations Underlying this Action

In addition to the original, non-biometric "summer 2019" verification process discussed above, Plaintiff alleges that "after receiving complaints globally about a lack of sufficient efforts to ensure that content creators were not minors[,]" in "the summer of 2021," OnlyFans required a "mass age/identity verification campaign that required many of its content creators … to reverify their age and identity through its automated biometric identity verification process." Compl. ¶ 24. Plaintiff alleges that the re-verification included a step in which content creators were required to "submit a photo of a government ID, in addition to a selfie of them holding the government ID." *Id*. ¶ 20. Plaintiff alleges that she completed this re-verification process, and that Fenix Internet "verified [her] identity by extracting her facial biometrics from her selfie, and comparing them to the facial biometrics that it extracted from her driver's license." *Id*. ¶¶ 30–32.

Plaintiff further alleges that although Fenix Internet knew she was an Illinois resident, it failed to comply with various provisions of BIPA. She asserts three BIPA claims. First, Plaintiff asserts that Fenix Internet violated Section 15(a) by "fail[ing] to make publicly available a valid written policy as to its retention and deletion practices regarding the biometrics in its possession." *Id*. ¶¶ 33, 49–51. Second, she contends that Fenix Internet violated Section 15(c) of BIPA by "profit[ing] from the collection of Plaintiff's biometrics and was only able to continue to legally

---

[4] The Terms of Service have been amended over time; however, the relevant exclusive-jurisdiction provision addressed in the current Motion has remained materially unchanged. Decl. ¶ 21.

operate its website by collecting … biometrics." *Id.* ¶¶ 34, 56–58. Finally, she claims that Fenix Internet "violated Section 15(e) of BIPA by having a substandard level of care compared to other entities that store highly sensitive personal information because it failed to prevent ex-employees from gaining access to the personal data it collected, including, upon information and belief, Plaintiff's biometric information." *Id.* ¶¶ 35, 65–67. She seeks to bring these claims on behalf of a putative class of all "individuals whose biometric identifiers or biometric information were collected, captured, stored, transmitted, disseminated, profited from, or otherwise used by or on behalf of [Fenix Internet] within the state of Illinois." *Id.* ¶ 37.

## ARGUMENT

The entire action should be dismissed for two independent reasons. **First**, the Court lacks personal jurisdiction over Fenix Internet. **Second**, even if the Court had personal jurisdiction over Fenix Internet, the Court should dismiss under the doctrine of forum non conveniens because Plaintiff chose to profit from OnlyFans, yet has disregarded a specific, clear contractual requirement by bringing suit in Cook County. Alternatively, if the Court retains this case, it should dismiss Plaintiff's Section 15(c) claim under Rule 12(b)(6).

## I. Fenix Internet Is Not Subject to Personal Jurisdiction in Illinois

To assert personal jurisdiction over Fenix Internet, this Court must first determine whether it is authorized to do so under Illinois's long-arm statute and the Fourteenth Amendment's Due Process requirements. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). The Illinois long-arm statute allows jurisdiction to the extent authorized by the Due Process Clause, such that the inquiries here merge. *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). To exercise jurisdiction over Fenix Internet, this Court must find it had sufficient "minimum contacts [with Illinois] such that maintenance of the suit does not offend traditional notions of fair play and

substantial justice.'" *Id.* (quotation omitted). Courts recognize two types of personal jurisdiction: general personal jurisdiction and specific personal jurisdiction. *Id.*

Plaintiff bears the burden of establishing personal jurisdiction. *Matlin*, 921 F.3d at 705. "Where, as here, the defendant[] submit[s] evidence opposing the district court's exercise of personal jurisdiction, the plaintiff must similarly submit affirmative evidence supporting the court's exercise of jurisdiction." *Id.* (citing *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). Plaintiff cannot rely on the pleadings alone. *See Purdue Rsch. Found.*, 338 F.3d at 782–83. Here, Plaintiff has not established (and cannot establish) any basis for this Court to exercise general or specific jurisdiction over Fenix Internet because none exists.

### A.      Fenix Internet Is Not Subject to General Jurisdiction in Illinois

General jurisdiction exists only when the defendant is "at home" in the forum State and "should not lightly be found." *Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 698–699 (7th Cir. 2015). In all but "exceptional case[s]," Plaintiff can establish general jurisdiction only by showing that the defendant is either incorporated in or has its principal place of business in the forum State. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Here, the Complaint does neither, nor could it. Fenix Internet is a Delaware limited liability company, as Plaintiff concedes, *see* Compl. ¶ 10, and has its principal place of business in Wilmington, Delaware. Decl. ¶¶ 3–4. Plaintiff's conclusory allegation that Fenix Internet "conducts business within" Illinois comes nowhere near establishing an "exceptional case" that otherwise vests this Court with the constitutional authority to hale an out-of-state defendant to face suit in Illinois. Compl. ¶ 12; *see Daimler*, 517 U.S. at 139 n.19 (discussing "exceptional case" example where war forced out-of-state company to temporarily move principal place of business from the Philippines to forum state); *see also, e.g.*, *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 741, 750 (N.D. Ill. 2018) (finding

7

"'continuous [business] activity' in Illinois" insufficient to establish "exceptional case"). As such, no basis exists for this Court to establish general jurisdiction over Fenix Internet.

### B.     Fenix Internet Is Not Subject to Specific Jurisdiction in Illinois

The threshold for specific personal jurisdiction is similarly demanding and also not met here. Specific jurisdiction arises where the defendant "has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and the alleged injury arises out of defendant's forum-related activities." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014). The focus is on "the relationship among the defendant, the forum, and the litigation." *Brook*, 873 F.3d at 552 (quoting *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014)). "The mere fact that a defendant's conduct affects a plaintiff with connections to the forum State is not sufficient to establish jurisdiction." *Id.* Rather, the defendant's contacts with the forum State must be "directly related to the conduct pertaining to the claims asserted." *Id.* In other words, defendant's "*suit-related conduct* must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284 (emphasis added). Here, the Complaint alleges no connection between Fenix Internet and the state of Illinois related to the alleged BIPA violations.

Plaintiff's primary jurisdictional allegation against Fenix Internet is false. As the Complaint explains, BIPA was enacted "[a]s a result of the need for enhanced protection of *biometrics*" and regulates "entities that interact with *biometric data*." Compl. ¶¶ 1–5 (emphases added). Accordingly, Plaintiff alleges (as she must to assert a violation of the statute) that Fenix Internet "collected, possessed and stored Plaintiff's biometrics as a result of their use of Defendant's website." *Id.* ¶ 12. But this allegation is simply incorrect. Fenix Internet does not collect, possess, or store biometric data, and has never collected, possessed or stored biometric data—let alone in connection with the use of the OnlyFans website. Decl. ¶ 12. Contrary to the Complaint's allegations, Fenix Internet does not operate the OnlyFans website. Compl. ¶¶ 14, 18;

8

Decl. ¶ 7. Fenix Internet processes payments made *after* users initiate transactions on the website. Decl. ¶ 9. Fenix Internet's sole responsibility is to perform payment assistance for Fenix International, and it is not involved in conducting the verification processes alleged in the Complaint. Compl. ¶¶ 19–24, 31; Decl. ¶¶ 10, 13. Fenix Internet has not interacted in any way with Plaintiff's biometric data, and Plaintiff cannot show that it did.

Plaintiff fails to allege any other "suit-related conduct" linking Fenix Internet to the state of Illinois. Excluding the false allegations described above, the *only* tie alleged between Fenix Internet and Illinois is that Fenix Internet "collects funds from purchases made on [OnlyFans.com] and distributes earnings to [the] content creators," and that "pay stubs and 1099 tax forms featured Defendant's name, Fenix Internet LLC and were sent to [Plaintiff's] Illinois address." Compl. ¶¶ 26, 29. But the Complaint fails to allege any connection between this conduct and the alleged violations of the BIPA statute—i.e., the alleged failure to publish a policy, unlawful reliance on biometric data to continue operating and profiting from the website, or failure to prevent former employees from accessing biometric data. *See id.* ¶¶ 33–35. This is because Fenix Internet does not use or require biometric data to process payments, and Plaintiff does not allege that it does. Decl. ¶ 11. Thus, Plaintiff fails to allege even the "attenuated" connection between Fenix Internet's conduct and the underlying BIPA claims that other Illinois district courts have found insufficient to establish specific jurisdiction. *See, e.g.*, *Salkauskaite v. Sephora USA, Inc.*, No. 18-CV-08507, 2020 WL 2796122, at *5 (N.D. Ill. May 30, 2020) (finding alleged contact "at most fortuitous or attenuated" where defendant provided technology used by a third party to collect biometric information in Illinois); *Bray v. Lathem Time Co.*, Case No. 19-CV-3157, 2020 WL 1492742, at *3–*5 (C.D. Ill. Mar. 27, 2020) (finding alleged contact "random and attenuated" where defendant supplied facial-recognition technology used by employers in Illinois);

9

*McGoveran v. Amazon Web Servs., Inc*., 488 F. Supp. 3d 714, 723 (S.D. Ill. 2020) (finding no specific jurisdiction where defendant provided the biometric technology used to analyze voices of third party's customers in Illinois). Here, the service Fenix Internet provides to the operator of the OnlyFans website is entirely unrelated to any alleged use of biometric data.

Plaintiff alleges no other connection to Illinois because she cannot. Fenix Internet has no property or employees in Illinois and is not registered to do business in Illinois. Decl. ¶¶ 14, 16. It does not engage in marketing or sales activity targeted at residents of Illinois, and does not target its payment processing services at residents of Illinois. *Id.* ¶ 15; *see, e.g.*, *Salkauskaite*, 2020 WL 2796122, at *4 (finding no specific jurisdiction based on declaration stating, among other things, that it never had property or employees in Illinois, was not registered to do business in Illinois, and did not target its marketing, sales or commercial activity toward Illinois); *Bray*, 2020 WL 1492742 at *4 (same). Rather, Fenix Internet collects from third-party processors payments made by fans *wherever* they are located and distributes the money it collects through other third-party providers to content creators *wherever* they are located. Decl. ¶ 9. That conduct is not targeted at Illinois. *See, e.g.*, *Gullen v. Facebook.com, Inc.*, No. 15-CV-7681, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016) (finding defendant did not target Illinois residents where it used its technology on "every user-uploaded photo," not just on those uploaded in or by residents of Illinois); *McGoveran*, 488 F. Supp. 3d at 722 (finding no basis to say defendants directed their activities at Illinois residents where plaintiff alleged defendants applied their technology "to every caller … not just those calls initiated by Illinois residents"). Finally, Plaintiff cannot rely on her own use of OnlyFans in Illinois to establish sufficient minimum contacts with respect to Fenix Internet. *See Walden*, 571 U.S. at 285 ("the plaintiff cannot be the only link between the defendant and the forum").

10

Because Plaintiff has not established, and cannot establish, personal jurisdiction with respect to Fenix Internet, the Compliant should be dismissed pursuant to Rule 12(b)(2).

## II.    The Courts of England and Wales Have Exclusive Jurisdiction over Plaintiff's Claims

Even if there were personal jurisdiction over Fenix Internet (there is not), the Court should still dismiss the case under the doctrine of forum non conveniens based on the exclusive-jurisdiction clause Plaintiff agreed to. *Dr. Robert L. Meinders, D.C., Ltd. v. United Healthcare Servs., Inc.*, 7 F.4th 555, 560 (7th Cir. 2021); *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). That clause provides that "the courts of England and Wales shall have *exclusive jurisdiction* to resolve any dispute or claim (including non-contractual disputes or claims) which you have or which we have arising out of or in connection with your agreement with us (including its subject matter or formation) or your use of OnlyFans." Ex. A to Decl., § 16.b (emphasis added). Under English law, which controls the issue, the clause applies to this lawsuit and is valid and enforceable, and so the Complaint should be dismissed.

To begin, to determine whether the exclusive-jurisdiction clause applies to this suit, the court must interpret the clause under "the law designated in the [Terms of Service's] choice of law clause." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 775 (7th Cir. 2014);[5] *see also Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir. 2007) ("determining the validity and meaning of a forum selection clause" requires "reference to the law of the jurisdiction whose law governs the rest of the contract"). The law of England and Wales governs the Terms of Service (Ex. A to Decl., § 16.b), so that law governs the clause's interpretation and enforceability. *Baxter Int'l Inc. v. AXA Versicherung AG*, 908 F. Supp. 2d 920, 923 (N.D. Ill. 2012).

---

[5] This differs from "most circuits," which hold "that the enforceability of forum-selection clauses is a matter of federal procedure and should therefore be decided under federal law." *Jackson*, 764 F.3d at 775.

Much like federal law, the law of England and Wales broadly interprets and enforces exclusive-jurisdiction clauses. As a leading case put it, "the general rule is clear: where parties have bound themselves by an exclusive jurisdiction clause effect should ordinarily be given to that obligation in the absence of strong reasons for departing from it. Whether a party can show strong reasons, sufficient to displace the other party's prima facie entitlement to enforce the contractual bargain, will depend on all the facts and circumstances of the particular case." *Donohue v. Armco Inc.* [2001] UKHL 64 at [24], 2001 WL 1479758 [Ex. 2 (Appendix of English Law) at A-6];[6] *see also BNP Paribas SA v. Anchorage Capital Europe LLP* [2013] EWHC 3073 (Comm) at [93], 2013 WL 5336632 [Ex. 2 at A-34] (applying *Donohue* and enjoining suit filed in New York based on exclusive jurisdiction clause). The burden of showing strong reasons not to enforce the clause is on the party opposing its enforcement. *See Catlin Syndicate Ltd v. Amec Foster Wheeler USA Corp* [2020] EWHC 2530 (Comm) at [33], 2020 WL 05713769 [Ex. 2 at A-42] (applying *Donohue* and granting injunction against suit filed in New Jersey). The analysis folds into two steps—first, does the forum selection clause encompass the dispute, and second, is it valid and enforceable?

On interpretation, English law embraces a wide view of what claims "arise under" an agreement. *Martinez v. Bloomberg LP*, 740 F.3d 211, 224 (2d Cir. 2014) (noting "proper approach to the construction of clauses agreeing [to] jurisdiction is to construe them widely and generously") (quoting *UBS AG v HSH Nordbank AG*, [2009] EWCA (Civ) 585 (Court of Appeal) at [82]). That

---

[6] If federal law applied, Plaintiff would face the same burdens in asking this Court to disregard her contractual agreement. *Atl. Marine Constr. Co.*, 571 U.S. at 62 n.5, 63–65 ("[a]s the party acting in violation of the forum-selection clause, [the plaintiff] must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer."). A court in another circuit applying this test enforced the OnlyFans forum selection clause specifically, *see Muniz v. Fenix Int'l Ltd.*, No. 1:20-CV-03200-LMM, 2021 WL 3417581, at *7 (N.D. Ga. June 28, 2021), holding that England was an adequate alternative forum and that the public-interest factors did not outweigh the forum selection clause, given the contract's selection of English law for all claims and there being no indication that court congestion in England would create administrative difficulties. The same analysis would apply here.

wide scope includes statutory and tort claims. *Id.* at 226–27 (citing "a leading English treatise" to reject argument that "discrimination claims [did] not 'aris[e] under' the employment contract because they are creatures of statute under both English and American law"); *Eastern Pacific Chartering Inc v. Pola Maritime Ltd* [2021] EWHC 1707 (Comm) at [44] [Ex. 2 at A-63] (holding claims arising solely in tort were covered by "arising out of or in connection with" clause).

Here, the exclusive-jurisdiction clause Plaintiff agreed to clearly encompasses this dispute. Plaintiff's Complaint alleges "dispute[s] or claim[s] … arising out of or in connection with [her] agreement with us … or [her] use of OnlyFans" (Ex. A to Decl., § 16.b), as her claims are directly the result of Plaintiff's use of OnlyFans to make money by using its platform, which Plaintiff could not have done without agreeing to be bound to the Terms of Service. *See, e.g.*, Compl. ¶¶ 30, 47, 56, 65 (alleging Plaintiff's biometrics were collected because of her use of OnlyFans); *see also* Decl. ¶¶ 18, 20. And while the contract is between Plaintiff and Fenix International, the exclusive-jurisdiction clause "may be enforced by [its] subsidiary companies," such as Fenix Internet. Ex. A to Decl., § 15.e. This satisfies English law, and the exclusive-jurisdiction clause thus encompasses this dispute. *See Martinez*, 740 F.3d at 224.

Next, as to validity and enforceability, the law of England and Wales requires the enforcement of this provision. To avoid enforcement of an exclusive jurisdiction clause, the party opposing it must "show strong reasons" based on "all the facts and circumstances of the particular case." *Donohue* [2001] UKHL 64 at [24] [Ex. 2 at A-6]. Plaintiff's Complaint does not even acknowledge the existence of the exclusive-jurisdiction clause, much less plead strong reasons for refusing to enforce it. Nor will Plaintiff be able to meet that burden, as she is not the first OnlyFans creator unable to justify filing suit in the United States rather than England and Wales. *See Muniz*,

2021 WL 3417581, at *7 (dismissing case under forum non conveniens because court was "bound to enforce the forum-selection clause" requiring litigation of "claims in England and Wales").

Because the exclusive-jurisdiction clause covers Plaintiff's claims and is enforceable, the Court should dismiss this case under the doctrine of forum non conveniens.

## III.     Plaintiff's Section 15(c) Claim Fails as a Matter of Law

Beyond the threshold jurisdictional and contractual problems discussed above, there are pleading problems too.  "To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is legally sound and plausible on its face." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 781 (7th Cir. 2015).[7]  Plaintiff's Section 15(c) claim is not legally sound as a matter of statutory interpretation and should be dismissed.

While no binding precedent exists on what it means to "otherwise profit from" biometrics, the most persuasive analysis of its meaning comes from *Vance v. Microsoft Corp.*, 534 F. Supp. 3d 1301 (W.D. Wash. 2021).  *Vance* noted that "to otherwise profit from" follows the verbs "sell, lease, [and] trade," all of which "contemplate a transaction in which an item is given or shared in exchange for something of value," which inform the meaning of "otherwise profit from" under the *ejusdem generis* doctrine.  *Id.* at 1306 (citing *Pooh-Bah Enters., Inc. v. Cty. of Cook*, 905 N.E.2d 781, 799 (Ill. 2009)).  It further explained that Section 15(c) thus "regulates transactions with two components: (1) access to biometric data is shared or given to another; and (2) in return for that access, the entity receives something of value."  *Id.* at 1307.  In this context, it concluded that while *profit*, viewed alone, may have a broader meaning, in context, "'otherwise profit' encompasses commercial transactions—such as a sale, lease or trade—during which the biometric data is transferred or shared in return for some benefit."  *Id.*

---

[7] For the purposes of the argument in this section, Fenix Internet accepts, as it must, the truth of the facts alleged in the Complaint, even though many of them are false.

Under *Vance*'s reasoned interpretation of "otherwise profit from," which the Court should adopt, Plaintiff has not alleged that Fenix Internet profits from her biometrics.  Plaintiff alleges that Fenix Internet violated Section 15(c)'s prohibition on "otherwise profit[ing] from a person's or a customer's biometric identifier or biometric information" because "Defendant obtained Plaintiff's and the other Class members' facial biometric for the sole purpose of being able to feature paid content and distribute funds to content creators like Plaintiff."  Compl. ¶ 58; *see also id.* ¶ 26 (alleging "Defendant unlawfully profited" because "the nature of the content that Defendant was hosting on its website" required it to obtain "biometrics in order to operate and obtain its revenue").  At no point does Plaintiff allege that Fenix Internet has shared her biometrics with anyone, or given anyone access to them, much less in exchange for something of value.  Instead, she alleges that Fenix Internet earns the profits in question by charging its content creators "a set percentage of the subscription and content purchases made by site visitors."  Compl. ¶ 18.  Her allegations simply do not come within the scope of the conduct the General Assembly intended to proscribe in Section 15(c), and her claim should be dismissed.

## <u>CONCLUSION</u>

For the reasons set forth above, Fenix Internet asks the Court to dismiss Plaintiff's Complaint for lack of personal jurisdiction.  Alternatively, it requests that the Court dismiss on grounds of forum non conveniens because the courts of England and Wales have exclusive jurisdiction over her claims.  As a further alternative, if the Court retains the case, Fenix Internet requests that the Court dismiss Plaintiff's BIPA Section 15(c) claim with prejudice.

Dated: January 31, 2022                    Respectfully Submitted,

WINSTON & STRAWN LLP

By:    */s/ Sean G. Wieber*
          Sean G. Wieber
          Patrick R. O'Meara
          35 West Wacker Drive
          WINSTON & STRAWN LLP
          Chicago, Illinois 60601
          Tel: (312) 558-5600
          Fax: (312) 558-5700
          swieber@winston.com
          pomeara@winston.com

          *Attorneys for Defendant*
          *Fenix Internet, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2022, I filed the foregoing document using the CM/ECF

system and caused it to be served on counsel for Plaintiff.

By: *s/ Sean G. Wieber*
    Sean G. Wieber
    Patrick R. O'Meara
    WINSTON & STRAWN LLP
    35 W. Wacker Dr.
    Chicago, Illinois 60601
    Tel: (312) 558-5600
    Fax: (312) 558-5700
    swieber@winston.com

    *Attorneys for Defendant Fenix Internet, LLC*

1