**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JANE DOE, YOLENE REYES, and DANIEL A. BARTELS, individually and on behalf of similarly situated individuals, | |
| Plaintiffs, | Case No. 21-cv-6624 |
| v. | Hon. Gary S. Feinerman |
| FENIX INTERNET LLC, a Delaware limited liability company, | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND AND RELEVANT ALLEGATIONS ...................................................... 3

    I.      OnlyFans, Fenix International, and Fenix Internet ................................................ 3

    II.     Plaintiffs' Specific Allegations Underlying This Action .......................................... 4

ARGUMENT ....................................................................................................................... 5

    I.      Fenix Internet Is Not Subject to Personal Jurisdiction in Illinois. ......................... 5

          A.     Fenix Internet Is Not Subject to General Jurisdiction in Illinois. .............. 6

          B.     Fenix Internet Is Not Subject to Specific Jurisdiction in Illinois............... 7

                i.     The Complaint Fails to Establish Specific Personal Jurisdiction Over Fenix Internet with Respect to the BIPA Claims................................. 7

                ii.    The Complaint Fails to Establish Specific Personal Jurisdiction Over Fenix Internet with Respect to the IRPA Claim. ............................... 10

    II.     Plaintiff Bartels's IRPA Claim Fails as a Matter of Law. .................................... 11

          A.     Plaintiff Bartels Fails to Allege Any IRPA Violation Entitling Him to Relief. ....................................................................................................... 11

          B.     Plaintiff Bartels's IRPA Claim Is Barred by the Statute of Limitations... 12

          C.     Plaintiff Bartels's IRPA Claim Is Barred by Section 230 of the CDA. ..... 13

    III.    Plaintiffs' BIPA 15(c) Claim and All BIPA Claims Based on the Third-Party Content Review System Fail as a Matter of Law. ................................................. 14

          A.     Plaintiffs' Section 15(c) Claim Rests on a Flawed Statutory Interpretation....................................................................................... 14

          B.     The Third-Party Content Review System Claims Are Not Plausibly Alleged. .................................................................................................. 15

CONCLUSION................................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbs v. Lily's Talent Agency, Inc.*,
2012 IL App (1st) 103726-U ..................................................................................12

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ...........................................................................10, 11

*Al Haj v. Pfizer Inc.*,
338 F. Supp. 3d 741 (N.D. Ill. 2018) .....................................................................7

*Avila v. CitiMortgage, Inc.*,
801 F.3d 777 (7th Cir. 2015) .........................................................................11, 14

*Bakopoulos v. Mars Petcare US, Inc.*,
2021 WL 2915215 (N.D. Ill. July 12, 2021).........................................................6

*Balt. Orioles, Inc. v. Major League Baseball Players Assoc.*,
805 F.2d 663 (7th Cir. 1986) ................................................................................12

*Blair v. Nev. Landing P'ship*,
859 N.E.2d 1188 (Ill. Ct. App. 2006) .............................................................12, 13

*Bray v. Lathem Time Co.*,
2020 WL 1492742 (C.D. Ill. Mar. 27, 2020)......................................................8, 9

*Brook v. McCormley*,
873 F.3d 549 (7th Cir. 2017) ..............................................................................6, 7

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)................................................................................................6

*Dancel v. Groupon, Inc.*,
949 F.3d 999 (7th Cir. 2019) ................................................................................11

*Dent v. Renaissance Mktg. Corp.*,
2015 WL 3484464 (N.D. Ill. June 1, 2015)..........................................................12

*Gullen v. Facebook.com, Inc.*,
2016 WL 245910 (N.D. Ill. Jan. 21, 2016).......................................................9, 10

*Gutierrez v. Wemagine.AI LLP*,
2022 WL 252704 (N.D. Ill. Jan. 26, 2022)...........................................................10

iii

*Huon v. Denton*,
    841 F.3d 733 (7th Cir. 2016) ..........................................................................13

*Kipp v. Ski Enter. Corp. of Wis.*,
    783 F.3d 695 (7th Cir. 2015) ............................................................................6

*Lopez v. Admiral Theatre, Inc.*,
    2019 WL 4735438 (N.D. Ill. Sept. 26, 2019) ................................................12

*Martin v. Living Essentials, LLC*,
    653 F. App'x 482 (7th Cir. 2016) ...................................................................13

*Matlin v. Spin Master Corp.*,
    921 F.3d 701 (7th Cir. 2019) ........................................................................5, 6

*McGoveran v. Amazon Web Servs., Inc.*,
    488 F. Supp. 3d 714 (S.D. Ill. 2020) ...............................................................8

*Mussat v. IQVIA, Inc.*,
    953 F.3d 441 (7th Cir. 2020) ............................................................................6

*N. Grain Mktg., LLC v. Greving*,
    743 F.3d 487 (7th Cir. 2014) ............................................................................7

*Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*,
    338 F.3d 773 (7th Cir. 2003) ............................................................................6

*Ray v. ESPN, Inc.*,
    783 F.3d 1140 (8th Cir. 2015) ........................................................................12

*Salkauskaite v. Sephora USA, Inc.*,
    2020 WL 2796122 (N.D. Ill. May 30, 2020) .................................................8, 9

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) ..........................................................................10

*Thompson v. Getty Images (US), Inc.*,
    2013 WL 3321612 (N.D. Ill. July 1, 2013)......................................................12

*Vance v. Microsoft Corp.*,
    534 F. Supp. 3d 1301 (W.D. Wash. 2021)........................................................14

*Walden v. Fiore*,
    571 U.S. 277 (2014)........................................................................................7, 9

## **INTRODUCTION**

Plaintiffs' Second Amended Class Action Complaint must be dismissed in its entirety for the threshold reason that Fenix Internet LLC ("Fenix Internet") has no connection to the alleged conduct or to the state of Illinois and, therefore, is not subject to jurisdiction in Illinois. Plaintiffs allege Fenix Internet operates the website OnlyFans.com ("OnlyFans"), a platform on which registered "content creators" earn money by posting and selling videos, among other content, to registered "fans." This is wrong. OnlyFans is operated by *non-party* Fenix International Limited ("Fenix International"), the U.K.-based parent company of Fenix Internet, a Delaware entity that processes payments on behalf of Fenix International. Thus, Plaintiffs have sued the wrong entity.

This case is primarily based on two safeguards Fenix International outsources to various third-party vendors to help prevent, among other things, the unlawful posting or sale of content featuring minors on OnlyFans. First, Fenix International requires content creators to verify their identity and age through a third-party, automated verification process ("Third-Party Verification Process"). Second, Fenix International uses a third-party, automated review system to, among other things, verify no minors appear in uploaded content ("Third-Party Content Review System").

Both Plaintiffs Doe[1] and Reyes are "content creators" who each completed the Third-Party Verification Process by submitting a "selfie" and a photo of their driver's licenses. Each now alleges her "biometrics" were extracted from those materials and that those safeguards, which they voluntarily undertook, violated the Illinois Biometric Information Privacy Act ("BIPA"). Not so. Plaintiff Bartels alleges the Third-Party Content Review System collected his "biometrics" without his consent from a video that was uploaded to, and offered for sale on, OnlyFans, in violation of

---

[1] While not part of this motion, Plaintiff Doe cannot meet her burden under the legal standard to sue under a pseudonym, and Fenix Internet reserves all arguments, rights, and remedies with respect to that issue.

BIPA, and that OnlyFans used his image for a "commercial purpose" without his consent in violation of the Illinois Right of Publicity Act ("IRPA"). Again, not so.

Illinois cannot exercise personal jurisdiction over Fenix Internet for these claims. As a Delaware entity with its principal place of business in Delaware, it is not "at home" in Illinois and, thus, is not subject to general jurisdiction here. Nor is there a basis to exercise specific jurisdiction. Plaintiffs' claims do not arise out of or relate to Fenix Internet's contacts with Illinois. Fenix Internet is not involved in the Third-Party Verification Process or Third-Party Content Review System on which their BIPA claims are based; in fact, Fenix Internet does not use or interact with purported biometric information at all. Likewise, it does not operate or otherwise make content available for sale on the OnlyFans website, as required for Plaintiff Bartels's IRPA claim.

However, alternatively, should this Court find personal jurisdiction over Fenix Internet (it should not), there are dispositive problems with Plaintiffs' claims as alleged. Indeed, while all claims will fail on the merits in due course, Bartels's IRPA claim warrants immediate dismissal under Rule 12(b)(6) for three independent reasons: Bartels's allegations establish that his identity was never public prior to any content purchase and that the Copyright Act preempts his theory; the claim is time-barred under the applicable one-year statute of limitations; and the claim is barred by Section 230 of the Communications Decency Act ("CDA"). Separately, Plaintiffs' BIPA Section 15(c) claim and all BIPA claims based on the Third-Party Content Review System also fail as a matter of law under Rule 12(b)(6). That is because Plaintiffs' Section 15(c) claim is based on an interpretation of the statute that is contrary to its plain meaning and would turn any business that uses biometric information in some way into one that "profits" from biometric information. Furthermore, the BIPA claims based on the Third-Party Content Review System are entirely conclusory and provide no basis from which to infer the process involves biometrics whatsoever.

## BACKGROUND AND RELEVANT ALLEGATIONS

**I.      OnlyFans, Fenix International, and Fenix Internet**

OnlyFans is a popular international content-sharing and social media website, which allows "content creators" to post material for sale to "fans."  ECF 24, Second Amended Class Action Complaint ("Compl.") ¶ 18.[2]  Content creators earn income by selling their content on a subscription-based or one-off transactional basis.  *Id.* ¶ 19.  As of June 2022, there are more than 242 million registered users on OnlyFans.  Ex. 1, Declaration of Lee Taylor ("Decl.") ¶ 8.

OnlyFans content creators may post a variety of content on the platform, including adult content.  Compl. ¶ 19.  However, to verify that content creators are not minors, they must submit to the Third-Party Verification Process.  *Id.* ¶¶ 23–28.  OnlyFans also uses the Third-Party Content Review System to verify no minors appear in uploaded content.  *Id.* ¶¶ 29–30.

OnlyFans is owned and operated by non-party Fenix International.  *See* Decl. ¶ 6.  Fenix International is incorporated and registered in England and Wales, with its headquarters in London.  *Id.* ¶ 5.  Plaintiffs, however, have *not* sued Fenix International here and instead allege (incorrectly) that Fenix Internet is the "United States-based operator of [OnlyFans]."  Compl. ¶ 22.

Fenix Internet is a Delaware limited liability company with its principal place of business in Delaware, and its sole member is London-based Fenix International.  Decl. ¶¶ 1, 3–4.  Fenix Internet facilitates certain payments for OnlyFans transactions between content creators and fans.

---

[2] Indeed, Fenix Internet previously filed a motion to dismiss Doe's original complaint for lack of personal jurisdiction and under the forum-selection clause in the applicable Terms of Service.  As detailed in Fenix Internet's motion to dismiss for forum non conveniens filed with this motion, after Fenix Internet moved to dismiss, Plaintiffs amended twice—*first*, to add new BIPA claims related to the Third-Party Content Review System with new plaintiffs purportedly with *no* connection to OnlyFans; and *second*, to withdraw two of those Plaintiffs based on disclosures from Fenix Internet "challenging" their allegations and replace them with a new plaintiff (Bartels) who also claims (falsely) never to have interacted with OnlyFans.  *See* ECF 22.  Despite this now being the third attempt to craft allegations and add plaintiffs to defeat dismissal, the fundamental defects in the claims alleged remain.  They have not been and, as the procedural history here suggests, *cannot* be cured by amendment.

*Id*. ¶ 9.  It does not use biometric data to do so, nor does it otherwise collect, possess, or store such data.  *Id*. ¶¶ 11–12.  It engages in no marketing, sales, or commercial activity targeted at Illinois residents.  *Id*. ¶ 16.  Its *only* contacts with Illinois arise from Fenix International's relationship with Illinois residents and, in any event, are unrelated to the BIPA and IRPA claims alleged here.

## II.    Plaintiffs' Specific Allegations Underlying This Action

The Complaint alleges that in the summer of 2021, OnlyFans required content creators to undergo the Third-Party Verification Process.  Compl. ¶ 26.  Each of Plaintiffs Doe and Reyes alleges she is a content creator that completed this Third-Party Verification Process, and that Fenix Internet "verified [her] identity by extracting her facial biometrics from her selfie, and comparing them to the facial biometrics that it extracted from her driver's license."  *Id*. ¶¶ 38–44.  Plaintiff Bartels alleges that in or about December 2020, he discovered that a video featuring him had been uploaded to OnlyFans as paid content, and that he never consented to the video being uploaded or sold.  *Id.* ¶¶ 46–47.  He alleges his facial biometrics were collected through the Third-Party Content Review System that, among other things, assists with verifying no minors appear in uploaded content.  *Id*. ¶ 48.

Plaintiffs allege that although Fenix Internet knew they were Illinois residents, it failed to comply with various provisions of BIPA.  Plaintiffs all allege three BIPA claims.  First, they assert Fenix Internet violated Section 15(a) by "fail[ing] to make publicly available a valid written policy as to its retention and deletion practices regarding the biometrics in its possession."  *Id*. ¶¶ 31, 61–62.  Second, they contend Fenix Internet violated Section 15(c) by "unlawfully profit[ing] from the facial biometrics it obtained from Plaintiffs" because it "necessarily relied on obtaining Plaintiffs' … biometrics in order to operate and obtain its revenue."  *Id.* ¶¶ 33, 81–82.  Third, they claim Fenix Internet "violated Section 15(e) … by having a substandard level of care … because it failed to prevent ex-employees from gaining access to the personal data it collected, including,

upon information and belief, Plaintiffs' biometric information." *Id.* ¶¶ 35, 91–92. Plaintiffs Doe and Reyes base these claims on the Third-Party Verification Process and Third-Party Content Review System, and Plaintiff Bartels bases his on the Third-Party Content Review System alone.

Plaintiff Bartels also alleges two other claims against Fenix Internet. First, he claims Fenix Internet violated Section 15(b) of BIPA by failing to "obtain[] informed written consent from individuals like [him] who were not aware that they were being featured in content uploaded to OnlyFans and that they would be subject to" the Third-Party Content Review System before acquiring their biometric data. *Id.* ¶¶ 32; 70–72. Second, he alleges Fenix Internet violated IRPA by "selling content that featured [him] throughout Illinois" without his consent. *Id.* ¶ 34; 99–102.

Plaintiffs seek to bring these claims on behalf of a putative class of Illinois residents who allegedly have had their biometrics used by Defendant, and two subclasses of Illinois residents: a 15(b) subclass of residents who are not content creators, and an IRPA subclass of residents who are not content creators and appeared in paid content allegedly sold by Fenix Internet. *Id.* ¶ 49.

## ARGUMENT

The entire action should be dismissed under Rule 12(b)(2) because this Court lacks personal jurisdiction over Fenix Internet. If the Court were to find a basis to exercise personal jurisdiction over Fenix Internet (of which there is none), it should dismiss under Rule 12(b)(6) the IRPA claim (Count V), the BIPA Section 15(c) claim (Count III), and all BIPA claims based on the Third-Party Content Review System (Count II in its entirety, and Counts I, III, and IV in part).

## I. Fenix Internet Is Not Subject to Personal Jurisdiction in Illinois.

To exercise personal jurisdiction over Fenix Internet, this Court must first determine whether it is authorized to do so under Illinois's long-arm statute and the Fourteenth Amendment's Due Process requirements. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). The inquiries here merge: this Court must find it has sufficient "minimum contacts [with Illinois] such

that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017) (quotation omitted). There are two types of personal jurisdiction: general and specific. *Id.*

Plaintiffs bear the burden of establishing personal jurisdiction, *Matlin*, 921 F.3d at 705, and must do so for each claim. *Bakopoulos v. Mars Petcare US, Inc.*, 2021 WL 2915215, at *4 (N.D. Ill. July 12, 2021) (citing *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447–48 (7th Cir. 2020)). Where, as here, the defendant submits evidence opposing the exercise of personal jurisdiction, plaintiffs "must similarly submit affirmative evidence supporting the court's exercise of jurisdiction." *Matlin*, 921 F.3d at 705. Plaintiffs cannot rely on the pleadings alone. *See Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782–83 (7th Cir. 2003). Here, Plaintiffs have not established (and cannot establish) any basis for this Court to exercise general or specific jurisdiction over Fenix Internet for any of their claims because none exists.

### A.      Fenix Internet Is Not Subject to General Jurisdiction in Illinois.

General jurisdiction exists only when the defendant is "at home" in the forum state and "should not lightly be found." *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 698–99 (7th Cir. 2015). In all but "exceptional case[s]," a plaintiff can establish general jurisdiction only by showing that the defendant is either incorporated in or has its principal place of business in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 137–39, n. 19 (2014). Here, the Complaint does neither. Nor could it. Fenix Internet is a Delaware limited liability company and has its principal place of business in Wilmington, Delaware. Decl. ¶¶ 3–4; Compl. ¶ 11. Plaintiffs' conclusory allegation that Fenix Internet "knowingly does business within Illinois and knowingly transacts business within Illinois" comes nowhere near establishing an "exceptional case" that vests this Court with the constitutional authority to hale an out-of-state defendant to face suit in Illinois. Compl. ¶ 16; *see Daimler*, 517 U.S. at 139 n.19 (discussing "exceptional case" example

where war forced out-of-state company to temporarily move principal place of business from the Philippines to forum state); *see also, e.g.*, *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 741, 749–50 (N.D. Ill. 2018) (finding "'continuous [business] activity' in Illinois" insufficient to establish "exceptional case"). As such, no basis exists for this Court to exercise general jurisdiction over Fenix Internet.

### B. Fenix Internet Is Not Subject to Specific Jurisdiction in Illinois.

The test for specific personal jurisdiction is also demanding and not met here. Specific jurisdiction arises where the defendant "has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, *and* the alleged injury arises out of defendant's forum-related activities." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (emphasis added). The focus is on "the relationship among the defendant, the forum, and the litigation." *Brook*, 873 F.3d at 552 (quoting *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014)). The defendant's contacts with the forum state must be "directly related to the conduct pertaining to the claims asserted." *Id.* In other words, defendant's "*suit-related conduct* must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284 (emphasis added). Here, Plaintiffs allege no connection between Fenix Internet and the state of Illinois related to the alleged BIPA or IRPA violations.

### i. The Complaint Fails to Establish Specific Personal Jurisdiction Over Fenix Internet with Respect to the BIPA Claims.

Plaintiffs' primary jurisdictional allegations against Fenix Internet are wrong. BIPA was enacted to "enhance[] protection of *biometrics*" and regulates "entities that interact with … *biometric data*." Compl. ¶¶ 1–5 (emphases added). Accordingly, Plaintiffs allege that Fenix Internet obtained their biometric data through two methods: (1) extracting the facial biometrics of content creators through the Third-Party Verification Process (*see id.* ¶¶ 26–28); or (2) collecting

7

their facial biometrics through the Third-Party Content Review System. *See id.* ¶¶ 29–30. But these allegations are incorrect. Fenix Internet does not collect, possess, or store biometric data, and has never collected, possessed or stored biometric data—let alone in connection with the use of OnlyFans. Decl. ¶ 12. Contrary to the Complaint's allegations, Fenix Internet *does not operate* the OnlyFans website. *Id*. ¶ 7. Fenix Internet processes certain payments on the website. *See id*. ¶ 9. Its sole responsibility is to perform payment assistance for Fenix International. *Id.* ¶ 10. It is not involved in the selection or operation of either the Third-Party Verification Process or the Third-Party Content Review System. *Id.* ¶¶ 13–14. Fenix Internet has not interacted in any way with Plaintiffs' biometric data, and Plaintiffs cannot show that it did. *See id*. ¶¶ 9–14.

Plaintiffs fail to allege any other "suit-related conduct" linking Fenix Internet to Illinois for their BIPA claims. Excluding the incorrect allegations described above, the *only* ties alleged between Fenix Internet and Illinois are that Fenix Internet "collects funds from purchases made on [OnlyFans] and distributes earnings to [the] content creators," and that "pay stubs and 1099 tax forms featured Defendant's name, Fenix Internet LLC[,] and were sent to [Doe's] Illinois address." Compl. ¶¶ 33, 37. But the Complaint alleges no connection between this conduct—which relates only to Plaintiffs Doe and Reyes—and the BIPA claims. This is because Fenix Internet does not use or require biometric data to provide payment processing services for Fenix International, and the Complaint does not (and cannot) allege that it does. Decl. ¶ 11. Thus, Plaintiffs' jurisdictional allegations are even weaker than the "attenuated" connection that other Illinois district courts have deemed insufficient. *See, e.g*., *Salkauskaite v. Sephora USA, Inc.*, 2020 WL 2796122, at *5 (N.D. Ill. May 30, 2020) (contact too "fortuitous or attenuated" where defendant's technology was used to collect biometrics in Illinois); *Bray v. Lathem Time Co*., 2020 WL 1492742, at *3–5 (C.D. Ill. Mar. 27, 2020); *McGoveran v. Amazon Web Servs., Inc*., 488 F. Supp. 3d 714, 723 (S.D. Ill. 2020).

The only remaining allegations linking Illinois to the BIPA claims focus on Plaintiffs—not Fenix Internet. Reyes alleges she was "located within Illinois" when she completed the Third-Party Verification Process, and Bartels alleges he "was a resident of Illinois" when his facial biometrics were allegedly collected through the Third-Party Content Review System. Compl. ¶¶ 41–42, 45. But Fenix Internet is not involved with conducting the Third-Party Verification Process or Third-Party Content Review System, or operating the website. *See* Decl. ¶¶ 7, 9–10, 13–14. And Plaintiffs cannot rely on their own use of OnlyFans in Illinois to establish sufficient minimum contacts with respect to Fenix Internet. *See Walden*, 571 U.S. at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum.").

Plaintiffs allege no other connection between Fenix Internet and Illinois because there is none. Fenix Internet has no property or employees in Illinois and is not registered to do business in Illinois. Decl. ¶¶ 15, 17. It does not engage in marketing or sales activity targeted at Illinois residents, and does not target its payment processing services at Illinois residents. *Id.* ¶ 16; *see, e.g.*, *Salkauskaite*, 2020 WL 2796122, at *4 (finding no specific jurisdiction based on declaration stating defendant never had property or employees in Illinois, was not registered to do business in Illinois, and did not target its marketing, sales or commercial activity toward Illinois); *Bray*, 2020 WL 1492742 at *4 (same). Rather, Fenix Internet collects from third-party processors payments made by fans *wherever* they are located and distributes the funds collected through other third-party providers to content creators *wherever* they are located. *See* Decl. ¶ 9. That conduct is not targeted at Illinois. *See, e.g.*, *Gullen v. Facebook.com, Inc.*, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016) (finding defendant did not target Illinois residents where it used its technology on "every user-uploaded photo," not just on those uploaded in or by Illinois residents).

ii.     **The Complaint Fails to Establish Specific Personal Jurisdiction Over Fenix Internet with Respect to the IRPA Claim.**

Similarly, Plaintiff Bartels fails to allege any connection between Fenix Internet, Illinois, and his IRPA claim.  Plaintiff Bartels alleges Fenix Internet used his image for a commercial purpose by "selling content that featured [him] throughout Illinois" without his consent.  Compl. ¶¶ 34, 99–102.  This core jurisdictional allegation is, again, wrong: as described above, Fenix Internet does not "sell" any content on, and is not otherwise involved in the operation of, OnlyFans; it merely processes certain payments.  Decl. ¶¶ 7, 9–10.

But even assuming Fenix Internet operated and "sold" content on OnlyFans, Bartels cannot plausibly allege any sale of content in which he appears was "expressly aimed at" Illinois with the "knowledge that the effects would be felt—that is, [he] would be injured—in" Illinois.  *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010).  First, Bartels fails to allege any reason why Fenix Internet would know that he appeared in any content posted on the website and, therefore, would suffer injury in Illinois.  *See, e.g.*, *Gullen*, 2016 WL 245910, at *3 (no jurisdiction where plaintiff, an Illinois resident who did not use Facebook, did not, "and could not plausibly, allege that Facebook knew an Illinois resident would upload a photo of him and tag his name to it").  Neither could Bartels establish that any sales "throughout Illinois" were linked to litigation-specific activity since, as explained below, he alleges his image was not made public until *after* a purchase was made.  *See infra* Section II.A; *see, e.g.*, *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (holding that only sales "related to [the] allegedly unlawful activity" were relevant to personal jurisdiction, for example, where residents saw the allegedly infringing post before making their purchase).  Contacts with Illinois residents unrelated to the IRPA claim, no matter how numerous, are insufficient on their own to establish jurisdiction. *See, e.g.*, *Gutierrez v. Wemagine.AI LLP*, 2022 WL 252704, at *2–3 (N.D. Ill. Jan. 26, 2022) (no

10

jurisdiction where "only contact with the forum state … [wa]s [plaintiff] (and other members of the putative class) downloading an app and using it").  To hold otherwise would mean Bartels could bring his claim in any state where residents access or purchase content on OnlyFans, which is improper.  *See Advanced Tactical*, 751 F.3d at 801 (exercising jurisdiction improper if it meant "a plaintiff could bring suit in literally any state where the defendant shipped at least one item").

Because no Plaintiff has established, and cannot establish, grounds for exercising personal jurisdiction over Fenix Internet, all claims should be dismissed under Rule 12(b)(2).

## II.   Plaintiff Bartels's IRPA Claim Fails as a Matter of Law.

Plaintiff Bartels's IRPA claim fails for three independent reasons.  First, Bartels's allegations establish the statute is inapplicable and that his theory of liability is preempted by the Copyright Act.  Second, the claim is barred by the one-year statute of limitations.  Third, Fenix Internet is immune from this IRPA claim under the CDA.

### A.  Plaintiff Bartels Fails to Allege Any IRPA Violation Entitling Him to Relief.

"To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is legally sound and plausible on its face."  *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 781 (7th Cir. 2015).[3]  IRPA proscribes, as relevant here, the "use of an individual's identity for commercial purposes" without written consent.  765 ILCS 1075/30(a).  To state a claim, Bartels must plead (1) the appropriation of his identity, (2) without his consent, (3) for a commercial purpose.  *See Dancel v. Groupon, Inc.*, 949 F.3d 999, 1008 (7th Cir. 2019).

Bartels pleads himself out of court on the "commercial purpose" element.  IRPA defines "commercial purpose" as "the *public* use or holding out of an individual's identity" in connection with the sale, advertisement or promotion of goods or services.  765 ILCS 1075/5 (emphasis

---

[3] For the purposes of arguments under Federal Rule of Civil Procedure 12(b)(6), Fenix Internet accepts, as it must, the truth of the facts alleged in the Complaint, even though many are incorrect.

added). In other words, a plaintiff's identity cannot be used for a "commercial purpose" unless it has been "distributed *to the public* in an effort to promote" the defendant's business. *Abbs v. Lily's Talent Agency, Inc.*, 2012 IL App (1st) 103726-U, ¶ 24 (emphasis added). Bartels alleges the opposite by pleading that the video featuring him "could only be viewed by purchasing it"— meaning the video (and Bartels) could be viewed only *after* a purchase had occurred. Compl. ¶ 46. Thus, Bartels's identity could not plausibly have been used to "entice" the sale of the video or any product. *Thompson v. Getty Images (US), Inc.*, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013).

Moreover, this same allegation establishes that Bartels's theory of IRPA liability is preempted by the Copyright Act, 17 U.S.C. § 301. "If the alleged use of the plaintiff's identity is confined solely to that plaintiff's performance in a copyrighted work, the entirety of the 'identity' in question is … fixed in … a tangible medium of expression," and "[t]he conduct violating the plaintiff's right to publicity would merely be" coextensive with the rights set out in the Copyright Act. *Dent v. Renaissance Mktg. Corp.*, 2015 WL 3484464, at *4 (N.D. Ill. June 1, 2015); *see also Balt. Orioles, Inc. v. Major League Baseball Players Assoc.*, 805 F.2d 663, 674 (7th Cir. 1986); *Ray v. ESPN, Inc.*, 783 F.3d 1140, 1144 (8th Cir. 2015).

Bartels's IRPA claim fails and should be dismissed with prejudice.

### B.     Plaintiff Bartels's IRPA Claim Is Barred by the Statute of Limitations.

IRPA "completely supplanted the common-law tort of appropriation of likeness" when it became effective in 1998. *Blair v. Nev. Landing P'ship*, 859 N.E.2d 1188, 1192 (Ill. Ct. App. 2006). That common law claim was subject to a one-year statute of limitations. *Id.* Since 1998, courts have nearly uniformly held that IRPA is subject to a one-year statute of limitations. *See, e.g., id.*; *Lopez v. Admiral Theatre, Inc.*, 2019 WL 4735438, at *2 (N.D. Ill. Sept. 26, 2019) (recognizing the "[t]he weight of authority from this District supports the application of a one-year

statute of limitations to the IRPA").  This Court should do the same.[4]  Bartels filed this claim in April 2022, more than one year after he alleges he discovered the video "in or about December 2020."  Compl. ¶ 46.  It follows that the video was posted more than one year before filing as well.  *See Blair*, 859 N.E.2d at 1192 (finding IRPA cause of action accrues "when the objectionable material was first published").  The IRPA claim should be dismissed with prejudice as untimely.

### C.    Plaintiff Bartels's IRPA Claim Is Barred by Section 230 of the CDA.

Even if Bartels's allegations stated an IPRA claim (which they do not), Section 230 of the CDA would bar that claim.[5]  Section 230(c)(1) provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).  The CDA applies to online forums that serve as "a mere passive conduit for disseminating [actionable] statements."  *Huon v. Denton*, 841 F.3d 733, 742 (7th Cir. 2016).  Here, Bartels seeks to hold an online forum (OnlyFans) liable for information provided by a third party (content creator) by alleging that a video he appears in was uploaded without his consent to OnlyFans, "a social media website" on which "*content creators* can make almost any type of content available" to fans.  Compl. ¶¶ 18–19, 46 (emphasis added).  His allegations establish that Section 230 bars his IRPA claim.

Thus, Bartels's IRPA claim should be dismissed with prejudice on *at least three* independent grounds.  The claim is meritless and was tacked on in this third attempt to plead claims that will stay in the United States.  As such, the Court should award Fenix Internet its reasonable attorneys' fees, costs, and expenses incurred in litigating this claim.  *See* 765 ILCS 1075/55.

---

[4] Neither the Supreme Court of Illinois nor the Seventh Circuit has addressed this question.  *See Martin v. Living Essentials, LLC*, 653 F. App'x 482, 485 (7th Cir. 2016).

[5] Fenix Internet accepts as true Plaintiffs' incorrect allegation that Fenix Internet operates the OnlyFans website, which pleads this claim into Section 230 immunity and out of court.  Of course, even Fenix International, as the website operator, would benefit from the same immunity.

III.    **Plaintiffs' BIPA 15(c) Claim and All BIPA Claims Based on the Third-Party Content Review System Fail as a Matter of Law.**

Plaintiffs' BIPA claims suffer from pleading deficiencies as well.  Specifically, Plaintiffs' Section 15(c) claim is based on a flawed interpretation of the statute, and the claims based on the Third-Party Content Review System are facially implausible.  *See Avila*, 801 F.3d at 781.

### A.  Plaintiffs' Section 15(c) Claim Rests on a Flawed Statutory Interpretation.

Plaintiffs' Section 15(c) claim is based on an incorrect and overbroad interpretation of the phrase "otherwise profit from."  While no binding precedent exists on what it means to "otherwise profit from" biometrics, the most persuasive interpretation comes from *Vance v. Microsoft Corp.*, 534 F. Supp. 3d 1301 (W.D. Wash. 2021).  *Vance* noted that "to otherwise profit from" follows the verbs "sell, lease, [and] trade," all of which "contemplate a transaction in which an item is given or shared in exchange for something of value," which informs the meaning of "otherwise profit from" under the *ejusdem generis* doctrine.  *Id.* at 1306.  It further explained that Section 15(c) thus "regulates transactions with two components: (1) access to biometric data is shared or given to another; and (2) in return for that access, the entity receives something of value."  *Id.* at 1307.  In this context, it concluded that while *profit*, viewed alone, may have a broader meaning, in context, "'otherwise profit' encompasses commercial transactions—such as a sale, lease or trade—during which the biometric data is transferred or shared in return for some benefit."  *Id.*

Under *Vance*'s reasoned interpretation, which the Court should adopt, Plaintiffs have not alleged that Fenix Internet "otherwise profit[s] from" their biometrics.  Plaintiffs allege that Fenix Internet violated Section 15(c) because Fenix Internet "obtained Plaintiffs' … facial biometric [sic] for the sole purpose of being able to feature paid content, collect payments from its users, and distribute funds to content creators such as Plaintiff Doe."  Compl. ¶ 81; *see also id.* ¶ 33.  At no point do Plaintiffs allege Fenix Internet has shared or given access to their biometrics, much less

in exchange for something of value. Instead, the Complaint alleges Fenix Internet earns profits by charging content creators "a set percentage of the subscription and content purchases made by site visitors." *Id.* ¶ 22. Plaintiffs' allegations do not come within the scope of the conduct the General Assembly intended to proscribe in Section 15(c), and the claim should be dismissed.

**B.      The Third-Party Content Review System Claims Are Not Plausibly Alleged.**

The Complaint's allegations related to the collection of biometrics via the Third-Party Content Review System are entirely conclusory. The Complaint merely alleges that OnlyFans uses a Third-Party Content Review System provided by a third-party vendor, the system purportedly "review[s] all uploaded content," and the system reviews this content "to ensure [it] does not feature a minor." *Id.* ¶ 29. The Complaint then concludes that "[a]ccordingly," anyone who appears in uploaded content has "their facial biometrics collected and analyzed by [the] review system." *Id.* ¶ 30. It provides zero explanation for *how* the technology verifies no minors appear in uploaded content and no basis for assuming it uses biometrics. None of these allegations provide a basis to infer that the Third-Party Content Review System described collects biometric data, or that it functions the same way the Third-Party Verification Process functions. *See, e.g.*, *id.* ¶¶ 27, 30 (alleging Third-Party Verification Process requires two sets of facial biometrics from the same person, whereas the Third-Party Content Review System verifies no minors appear in content featuring even non-users, who have never submitted a picture to OnlyFans). Thus, the Court should dismiss the BIPA claims based on the Third-Party Content Review System.

<u>**CONCLUSION**</u>

For these reasons, the Court should dismiss the Complaint in its entirety for lack of personal jurisdiction. Alternatively, the Court should dismiss the IRPA claim (Count V), the BIPA Section 15(c) claim (Count III), and all BIPA claims based on the Third-Party Content Review System (Count II in its entirety, and Counts I, III, and IV in part).

Dated: June 3, 2022

Respectfully Submitted,

WINSTON & STRAWN LLP

By:   /s/ *Sean G. Wieber*
　　　Sean G. Wieber
　　　Patrick R. O'Meara
　　　35 West Wacker Drive
　　　WINSTON & STRAWN LLP
　　　Chicago, Illinois 60601
　　　Tel.: (312) 558-5600
　　　Fax: (312) 558-5700
　　　swieber@winston.com
　　　pomeara@winston.com

　　　*Attorneys for Defendant*
　　　*Fenix Internet LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2022, I filed the foregoing document using the CM/ECF

system and caused it to be served on counsel for Plaintiffs.

By: /s/ *Sean G. Wieber*
Sean G. Wieber
Patrick R. O'Meara
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, Illinois 60601
Tel.: (312) 558-5600
Fax: (312) 558-5700
swieber@winston.com

*Attorneys for Defendant Fenix Internet LLC*