IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Jane Doe et al., | |
| Plaintiffs, | No. 1:21-cv-06624 |
| v. | Honorable Nancy L. Maldonado |
| Fenix Internet, LLC, | |
| Defendant. | |

**Memorandum Opinion and Order**

Plaintiffs Jane Doe, Yolene Reyes, and Daniel A. Bartels (collectively, "Plaintiffs") bring this class action against Defendant Fenix Internet, LLC ("Fenix Internet"). Plaintiffs allege that Fenix Internet is the operator of the website Onlyfans.com, and that it violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/15(a)–(e), and the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq.*, through its alleged use of an automated age verification process. Pending before the Court are three motions: Fenix Internet's motion to dismiss for lack of personal jurisdiction (Dkt. 26), Fenix Internet's motion to dismiss under the doctrine of forum non conveniens (Dkt. 28), and Plaintiffs' motion to remand, or in the alternative, for leave to conduct jurisdictional discovery as to the citizenship of the putative class members (Dkt. 50.)

For the reasons discussed in this opinion and order, the Court grants Fenix Internet's motion to dismiss for lack of personal jurisdiction. (Dkt. 26.) In short, the Court concludes that Plaintiffs have failed to establish specific personal jurisdiction, as they have not come forward with evidence to dispute Fenix Internet's affirmative evidence demonstrating that it has no involvement in the age and content verification processes that are the subject of the lawsuit. Fenix

1

Internet is therefore dismissed as a defendant based on a lack of personal jurisdiction. Accordingly, Fenix Internet's alternative motion to dismiss under the doctrine of forum non conveniens (Dkt. 28), and Plaintiffs' motion to remand or for jurisdictional discovery (Dkt. 50), are both denied as moot. The Court will give Plaintiffs one opportunity to file a further amended complaint within 30 days of this Order if they have a good faith basis to believe they can name a proper defendant for whom jurisdiction and venue in this District are satisfied. The Court cautions Plaintiffs that based on its review of the parties' briefing the Court questions whether this forum is appropriate, given that it appears the only proper defendant is based internationally, and Plaintiffs may be subject to forum selection clauses. Regardless, if Plaintiffs believe they have a good faith basis to file an amended complaint, they may do so. Further, if Plaintiffs file an amended complaint, they must either identify Jane Doe or file a motion demonstrating that exceptional circumstances warrant anonymity. *See* supra at note 2.

## Background[1]

### A. Allegations in Second Amended Complaint

The following allegations are taken from the Second Amended Complaint ("SAC") (Dkt. 24.) Plaintiffs allege that Defendant Fenix Internet is the United States-based operator of Onlyfans.com. (*Id.* ¶¶ 18, 22.) Onlyfans.com is a social media website that primarily features adult-entertainment content, where "Fans" pay for content created by "Content Creators." (*Id.* ¶¶ 18–19.) Fenix Internet allegedly provides a platform for the Content Creators and pays them a set percentage of the subscriptions and purchases made by site visitors. (*Id.* ¶ 22.) Fenix Internet is the entity that collects funds from purchases made on Onlyfans.com and distributes earnings to the Content Creators. (*Id.* ¶ 33.)

---

[1] In citations to the record, page numbers are taken from the CM/ECF headers.

Because of the adult nature of the majority of Onlyfans.com content, an individual must go through a registration process in order to become a Content Creator, which includes verification of age and identity. (*Id.* ¶ 23.) Specifically, a Content Creator must submit a photo of a government ID, in addition to a photo (a "selfie") of them holding the government ID, after which they are verified as a Content Creator within 24 to 48 hours. (*Id.* ¶ 24.) In addition to this initial verification process, Fenix Internet allegedly uses a "Fast Automated Verification" process for verifying Content Creators' age and identity. (*Id.* ¶ 25.) This Fast Automated Verification process may be triggered if a Content Creator's content is flagged for signs of suspicious activity, or otherwise as part of Fenix Internet's internal review requirements. (*Id.*) When a Content Creator uses the automated verification process, they are forwarded to a portal within the Onlyfans.com website that asks them to submit a selfie of their face. (*Id.* ¶ 26.) They must then submit a picture of the front and back of a valid government ID that features their face. (*Id.*) The automated verification process creates a geometric profile of the Content Creator's face and compares it to the biometric profile that it extracts from the user's ID, to see if there is a match. (*Id.* ¶ 27.) Through the automated verification process, Fenix Internet has allegedly collected the facial biometrics of thousands of individuals, including Illinois residents. (*Id.*)

After receiving complaints globally about a lack of sufficient efforts to ensure that Content Creators were not minors, in the summer of 2021 Onlyfans.com undertook a mass verification campaign that required many of its Content Creators to re-verify their age and identity through the automated identity verification process. (*Id.* ¶ 28.) Content Creators had to undergo the verification process before they could sell any more content or withdraw any fund balances on their Onlyfans.com account. (*Id.*)

In addition, to ensure that uploaded content does not feature minors, Onlyfans.com uses an automated artificial intelligence ("AI") content review system provided by SightEngine to review all uploaded content. (*Id.* ¶ 29.) Thus, in addition to Content Creators going through a biometric identity verification process, all individuals appearing in uploaded content also have their facial biometrics collected and analyzed by the AI review system. (*Id.* ¶ 30.) Even those individuals who appear in content but are not aware that such content has been uploaded have their biometrics analyzed by the AI review system. (*Id.*)

Fenix Internet did not make publicly available a written policy regarding its biometrics retention and deletion practices. (*Id.* ¶ 31.) Neither did Fenix Internet obtain written consent from individuals who were not aware that they appeared in content uploaded to Onlyfans.com and would be subject to the AI review system. (*Id.* ¶ 32.) As the entity that collects funds from purchases made on Onlyfans.com and distributes earnings to the Content Creators, Fenix Internet allegedly profited from the facial biometrics it obtained from the Content Creators. (*Id.* ¶ 33.)

Plaintiffs, who are three individuals seeking to represent a class, make additional allegations specific to their individual experiences with Onlyfans.com. Plaintiffs Doe[2] and Reyes allege that they are Illinois residents who completed the age verification process to become Content Creators in 2019 and 2021, respectively. (*Id.* ¶ 36, 41.) Both Doe and Reyes also allege they were required to re-verify their ages and identities at various times through the automated age

---

[2] Plaintiff Doe, an individual who voluntarily engages as a Content Creator on Onlyfans.com, has not explained why she should be allowed to proceed under a pseudonym, and she would likely not be permitted to in light of Seventh Circuit precedent. *See Doe v. Vill. of Deerfield*, 819 F.3d 372, 376–77 (7th Cir. 2016) ("We have repeatedly voiced our disfavor of parties proceeding anonymously, as anonymous litigation runs contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes."). The Seventh Circuit recently reiterated that only "exceptional circumstances"—such as a substantial risk of harm— justifies the use of a fictitious name for an adult. *See Doe v. Loyola Univ. Chicago*, 100 F.4th 910, 913 (7th Cir. 2024) (citing *Doe v. Trustees of Indiana Univ.*, 101 F.4th 485, 491 (7th Cir. 2024)). On the other hand, the mere "desire to keep embarrassing information secret does not justify anonymity." *Id.* Plaintiffs must abide by this caselaw if they file a further amended complaint, and if Doe intends to seek to proceed anonymously, she will be required to demonstrate exceptional circumstances beyond mere embarrassment.

4

verification process. (*Id.* ¶¶ 38, 41.) Doe and Reyes state that they did not want their personal identities revealed and did not wish to submit to the automated verification process, but they were forced to do so if they wished to withdraw any funds or post any additional content for sale. (*Id.* ¶¶ 39, 43.) Each time they submitted selfies of their faces and pictures of their driver's licenses, the verification technology extracted facial biometrics from the selfies and compared them to the facial biometrics extracted from the driver's licenses. (*Id.* ¶¶ 40, 44.)

Plaintiff Bartels's allegations are somewhat different: in December 2020, Bartels discovered that a video featuring him had been uploaded to Onlyfans.com and was listed as paid content, which could only be viewed by purchasing it. (*Id.* ¶ 46.) Bartels is not a Content Creator and had never consented to the video being uploaded or sold. (*Id.* ¶ 47.) Fenix Internet allegedly collected Bartels's facial biometrics through its AI content review system. (*Id.* ¶ 48.)

    **B. Procedural History and Additional Evidence Related to Personal Jurisdiction**

Plaintiff Jane Doe initiated this case as a putative class action in November 2021 in the Circuit Court of Cook County, Illinois. Fenix Internet subsequently removed the action to this Court on December 10, 2021, and proceeded to file a motion to dismiss for lack of personal jurisdiction and under the doctrine of forum non conveniens. (Dkts. 1, 11.) Doe proceeded to file a First Amended Complaint ("FAC"), adding several additional named plaintiffs, including Reyes and two other plaintiffs, but subsequently sought leave to amend again before Fenix Internet had responded to the FAC. (Dkts. 18, 22.) Plaintiffs then filed the operative SAC on April 21, 2022, dropping two of the added plaintiffs from the FAC, and substituting in Plaintiff Bartels (leaving Doe, Reyes, and Bartels as the named plaintiffs). (Dkt. 24.) In the SAC, Plaintiffs bring a number of claims under BIPA individually and on behalf of a putative class based on the collection of biometric information, and Plaintiff Bartels additionally brings a claim under the IRPA based on

5

the alleged use of his identity in videos without his consent for commercial purposes. (*See generally id.*)

Fenix Internet responded to the SAC with a motion to dismiss for lack of personal jurisdiction, and an alternative motion to dismiss under the doctrine of forum non conveniens. (Dkts. 26, 28.) Fenix Internet's motion to dismiss for lack of personal jurisdiction also contains the alternative arguments that the Court should dismiss several of the Plaintiffs' claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 26 at 15–19.)

With respect to its personal jurisdiction argument in particular, Fenix Internet contends that it cannot be subject to personal jurisdiction in Illinois because it is a Delaware entity with its principal place of business in Delaware, and further because Plaintiffs' claims do not arise out of or relate to Fenix Internet's contacts with Illinois. (Dkt. 27 at 5–6.) Fenix Internet argues that Plaintiffs have sued the wrong entity, and that it is the United Kingdom-based parent company of Fenix Internet, Fenix International Limited ("Fenix International"), that actually operates OnlyFans.com and manages the age verification processes that are the subject of the SAC. (*Id.*) For support, Fenix Internet attaches a declaration from the Director of Fenix International, Lee Taylor, who states that Fenix International is the sole member of Fenix Internet, which is one of Fenix International's subsidiaries. (Dkt. 27-2.) Taylor states that Fenix Internet is based in Delaware, has no property or employees in Illinois, and that its sole responsibility is to provide payment processing services to the operator of Onlyfans.com, which is actually Fenix International. (*Id.* ¶¶ 4, 9, 15.) According to Taylor, Fenix Internet facilitates the payments between Fans and Content Creators, and works with third-party payment processors to collect payments and distribute the money through other providers to Content Creators. (*Id.*) As to the operation of Onlyfans.com generally and the age verification and content review processes referenced in the

6

SAC, Taylor states that those matters are all overseen by Fenix International, and that Fenix Internet is not involved in conducting age verification, does not engage in any collection of biometric data from Content Creators, and has no relationship or involvement with the third-party vendors that perform verifications for Fenix International. (*Id.* ¶¶ 6, 11–13.)

Plaintiffs filed oppositions to both of Fenix Internet's motions, but as will be discussed further below, they notably did not submit any of their own affidavits or evidence in opposition to Taylor's claims. (Dkts. 33, 34.) Separately, after briefing on both of Fenix Internet's motions were complete, Plaintiffs filed their own motion to remand or in the alternative for leave to conduct jurisdictional discovery (Dkt. 50.) In their motion, Plaintiffs argue that the removal was improper because the Court lacks subject matter jurisdiction over Plaintiffs' claims pursuant to the "local controversy" exception under the Class Action Fairness Act ("CAFA"). As part of that argument, Plaintiffs contend that more than two-thirds of the proposed classes and subclasses are Illinois residents, and therefore removal under CAFA is inappropriate. (*Id.* at 7.) Plaintiffs alternatively state that, should the Court require further evidence regarding the citizenship of the members of the putative class, it should permit the parties to engage in expedited discovery on that limited issue. (*Id.* at 7 n.1.)

## Legal Standard

Federal Rule of Civil Procedure 12(b)(2) allows a party to seek dismissal of a complaint based on a lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Federal courts typically look to the state law of the forum in which they are based to determine if they can exercise personal jurisdiction over an out-of-state defendant. *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *Daimler AG v. Bauman*, 134 S.Ct. 746, 753 (2014)). "The Illinois long-arm statute permits the exercise of personal jurisdiction to the full extent permitted by the Fourteenth Amendment's

7

Due Process Clause. Thus, the relevant inquiry is 'whether the exercise of personal jurisdiction would violate federal due process.'" *Hernandez v. Omnitracs, LLC,* No. 1:22-CV-00109, 2024 WL 1376352, at *3 (N.D. Ill. Mar. 31, 2024) (internal citations omitted). Under the Due Process Clause, a state court may exercise either general or specific personal jurisdiction. *See, e.g.*, *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). General jurisdiction refers to the forum in which a party, either a person or corporation, is "essentially at home." *Id.* Specific jurisdiction covers those cases where a party is not "at-home" in the forum state, but has sufficient "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *See NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 621 (7th Cir. 2022) (citing *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

Normally, for the purposes of a motion to dismiss, the allegations in a complaint are assumed to be true and all reasonable inferences are drawn in favor of the nonmoving party. *See Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016); *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). "When a defendant challenges personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), however, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Furthermore, where "the defendants submit evidence opposing the district court's exercise of personal jurisdiction, the plaintiffs must similarly submit affirmative evidence supporting the court's exercise of jurisdiction." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019) (citing *Purdue Rsch. Found.*, 338 F.3d at 782). The Court generally must accept statements in the parties' affidavits as true and resolve any conflicts in the plaintiffs' favor. *See NBA Properties*, 46 F.4th at 620.

8

**Discussion**

The parties have filed several competing motions raising challenges to (1) this Court's personal jurisdiction over Fenix Internet; (2) the propriety of removal and the Court's subject matter jurisdiction over Plaintiffs' claims; and (3) whether Plaintiffs have plausibly stated claims for relief. While issues of subject matter jurisdiction are normally resolved first, there is no "mandatory sequencing of jurisdictional issues, and courts have discretion to decide matters of personal jurisdiction first." *See, e.g.*, *KM LPTV of Chicago-13, LLC v. S.O.S. Media Holdings, Inc.,* No. 14 C 10227, 2015 WL 12834764, at *2 (N.D. Ill. Sept. 15, 2015) (cleaned up); *see also Intec USA, LLC v. Engle*, 467 F.3d 1038, 1040 (7th Cir. 2006) ("[T]here is no priority between subject-matter jurisdiction and personal jurisdiction."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999) (recognizing that district courts are within their discretion to resolve "straightforward personal jurisdiction" issues first rather than subject matter jurisdiction). Here because the Court concludes that the personal jurisdiction issue is straightforward and requires dismissal, the Court will resolve that issue first.

At the outset, the Court notes that Plaintiffs have conceded that general jurisdiction does not apply here, and the only question is whether Fenix Internet can be subject to specific jurisdiction in Illinois. (See Dkt. 32 at 6–9.) There are three requirements for a court to exercise specific personal jurisdiction over a defendant: (1) the defendant must have purposefully availed itself of the privilege of conducting business in the forum state or directed its activities at the forum state; (2) the plaintiff's injury must have arisen out of the defendant's forum-related activities; and (3) the Court's exercise of personal jurisdiction must "comport with traditional notions of fair play and substantial justice." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392–93 (7th Cir. 2020) (citation omitted).

9

Fenix Internet focuses on the second requirement and argues that it cannot be subject to specific jurisdiction in Illinois because Plaintiffs' alleged injuries and causes of action under BIPA and the IRPA did not "arise out of" Fenix Internet's activities in Illinois. (*See* Dkt. 27 at 5, 13–14.) Fenix Internet contends, as set out in the Taylor declaration, that it is a Delaware entity with no employes or office in Illinois, and that it acts as merely a payment processor for its parent-company Fenix International. (Dkt. 27 at 5.) According to the declaration, Fenix International is incorporated and registered in England and Wales and headquartered in London, is the entity that actually operates Onlyfans.com, and is the party that Plaintiffs should have sued. (*Id.*) Fenix Internet maintains that, contrary to Plaintiffs' allegations, because it is merely a payment processor, it does not use or interact with purported biometric information, and it has no involvement in the age verification process, which is handled by Fenix International. (Dkt. 27 at 6–7.) Fenix Internet thus argues that, because it does not use or interact with biometric information, Plaintiffs' BIPA claims here do not arise out of or relate to Fenix Internet's contacts with Illinois, which are solely related to its processing of payments. (Dkt. 27 at 11–12.) Similarly, Fenix Internet argues that Plaintiff Bartels's IRPA claims are based on the Onlyfans.com content review system, and its use of content for commercial purposes, which again, Fenix Internet has nothing to do with, as it is merely the payment processor. (Dkt. 27 at 14.)

In response, Plaintiffs concede that the allegations in the SAC need not be accepted if they are refuted through undisputed affidavits. (*Id.*) (citing *Swanson v. City of Hammond*, 411 F. App'x 913, 915 (7th Cir. 2011)). Nevertheless, Plaintiffs argue that they need only make out a prima facie case of specific personal jurisdiction, which they insist they have done. (*Id.* at 7); *see generally Curry,* 949 F.3d at 393 ("[W]ithout the benefit of an evidentiary hearing, the plaintiff bears only the burden of making a prima facie case for personal jurisdiction.") (citation omitted). Specifically,

10

Plaintiffs argue that Fenix Internet purposefully availed itself of the Illinois market, and argue the claims arise out of those Illinois-directed contacts, because Fenix Internet was previously headquartered in Illinois at the time that it allegedly collected the biometrics and when Plaintiff Bartels discovered the IRPA violation. (*Id.* at 8–9.)

The Court agrees with Fenix Internet and finds that Plaintiffs have failed to make a prima facie showing of personal jurisdiction, as there is no indication that Plaintiffs' injuries giving rise to their BIPA and IRPA claims arise out of Fenix Internet's activities in Illinois. Fenix Internet has provided affirmative evidence in the form of a sworn declaration that Fenix Internet does not collect or interact with biometrics, and has no involvement in the age verification process, content review process, or the operation of Onlyfans.com generally. This affidavit further shows that Fenix Internet's only activities in Illinois are as a payment processor for Fenix International, which is the entity that actually operates Onlyfans.com and handles age verification and content review. Because Fenix Internet provided affirmative evidence challenging personal jurisdiction, Plaintiffs needed to present their own affirmative evidence to dispute the fact that Fenix Internet does not actually operate Onlyfans.com and has no involvement in the activities giving rise to their alleged injuries. Had Plaintiffs submitted any such evidence, the Court would have resolved any factual disputes in Plaintiffs' favor. But Plaintiffs' briefing utterly ignores the Taylor declaration and Fenix Internet's evidence about Fenix International, and instead boldly attempts to fall back on their allegations in the SAC that Fenix Internet is the entity that collects their biometric data. In resolving a dispute over personal jurisdiction, however, the Court need not accept Plaintiffs' allegations when they are controverted by sworn affidavits from the defendant. *See, e.g.*, *J&J Sports Prods., Inc. v. Fialko*, No. 17 C 3275, 2018 WL 576144, at *1 (N.D. Ill. Jan. 26, 2018) ("The jurisdictional allegations in the Complaint are taken as true *unless controverted by the*

11

*defendant's affidavits*.") (emphasis added) (citation omitted); *see also Matlin*, 921 F.3d at 705 ("[where] the defendants submit evidence opposing the district court's exercise of personal jurisdiction, the plaintiffs must similarly submit affirmative evidence supporting the court's exercise of jurisdiction.").

Here then, in the absence of evidence from Plaintiffs, the Court accepts it as true for the purposes of assessing personal jurisdiction that Fenix Internet is not the entity involved in age verification or content review, but merely handles payment processing. Therefore, even assuming that Fenix Internet purposefully availed itself of the Illinois market by directing payment processing services to Onlyfans.com Content Creators and Fans in Illinois, Plaintiffs have not demonstrated that their alleged BIPA and IRPA injuries arise out of or relate to those payment-processing activities in Illinois. It is simply not enough for the purposes of establishing specific personal jurisdiction that Fenix Internet may have interacted with Plaintiffs with respect to payment processing, or directed such payment processing activities to Illinois, if those contacts have no relation to the BIPA and IRPA claims at issue. *See generally Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 264, (2017) ("For specific jurisdiction, a defendant's general connections with the forum are not enough . . . What is needed . . . is a connection between the forum and the specific claims at issue."); *see also Curry*, 949 F.3d at 400 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."). In short, Plaintiffs have failed to establish a necessary element of specific personal jurisdiction—a connection between Fenix Internet's contacts with Illinois and the claims at issue.[3]

---

[3] Plaintiffs suggest in passing that Bartels's IRPA claim relates to payment processing because Fenix Internet's activities "processing payments and issuing pay stubs, relate directly to its profiting from Plaintiff Bartels' likeness." (Dkt. 34 at 8.) But again, the record evidence from Fenix Internet contradicts this claim. Taylor's declaration indicates Fenix Internet is not involved in content review or the sale of content, or anything related to the operation of

Plaintiffs' repeated contention, in its briefing and its SAC, that Fenix Internet was previously "headquartered" in Illinois does nothing to change this finding. As an initial matter, Plaintiffs' framing of Fenix Internet's prior office as its "headquarters" is factually unsupported. Plaintiffs do not explain in their personal jurisdiction briefing the source of this claim, but in their separate motion to remand they point to several annual reports from Fenix International which listed Fenix Internet as having a "registered office" in Illinois in 2020 and 2021. (Dkt. 50 at 4 n.3.) But a "registered office" is not the same thing as a headquarters—a business may have several offices, but its headquarters is the "actual center of direction, control, and coordination, i.e., the 'nerve center.'" *See Hertz Corp. v. Friend*, 559 U.S. 77, 78 (2010). Fenix Internet, in a separate declaration from Taylor, indicates that the registered office in Illinois was simply used as a mailing address, and that the company's principal place of business from which it controlled its business was in Delaware. (Dkt. 51-2 ¶ 5.) Plaintiffs have presented no evidence to dispute these assertions or which would suggest the office in Illinois was used for anything other than mailing, and it therefore did not constitute a headquarters.

In any event, Fenix Internet's previous presence in Illinois, regardless of the extent of that presence, is irrelevant to the issue of specific jurisdiction. A corporation's headquarters and principal place of business is relevant to the issue of *general* personal jurisdiction in determining the forum in which the business is at home. But Plaintiffs have conceded that general jurisdiction does not exist, and that the issue is specific jurisdiction. As discussed above, for specific jurisdiction to exist, the defendant's contacts with the forum must relate to the claim. Thus, even if Fenix Internet had an office in Illinois, that fact is irrelevant to specific jurisdiction if Fenix's

---

Onlyfans.com outside of processing payments. There is thus nothing to support the contention that Fenix Internet, as opposed to Fenix International, "profited from Bartels's likeness through the processing of payments." Thus, Fenix Internet's activities are unrelated to Bartels's claims and do not establish specific jurisdiction.

presence and office have no relation to the claims. As already explained, Fenix Internet's activities in Illinois, which were limited to payment processing, have nothing to do with Plaintiffs' BIPA and IPRA claims. To the extent that Fenix Internet accepted mail at an Illinois office, that fact alone bears no relation to Plaintiffs' alleged injuries of their biometric information being collected or their likenesses being used for commercial purposes by Fenix International.

In sum, while Plaintiffs repeatedly allege that Fenix Internet had its headquarters in Illinois, and collected their biometric data, Plaintiffs have failed to come forward with affirmative evidence to controvert Fenix Internet's sworn declarations disputing these allegations. Accepting the statements in the declarations as true, which the Court must do in the absence of any affirmative evidence to the contrary, the Court concludes that it lacks personal jurisdiction over Fenix Internet, as the company is based in Delaware and Plaintiffs' claims do not arise from Fenix Internet's contacts with Illinois. In short, it is apparent to the Court that Plaintiffs have sued the wrong entity, and their BIPA and IPRA claims based on the collection of their biometric data implicate Fenix Internet's parent, Fenix International. Whether or not Plaintiffs can maintain claims against Fenix International, and the forum they would be required to bring those claims in, are questions that the Court need not resolve. All that matters is that the Court lacks personal jurisdiction over the named defendant Fenix Internet, which mandates dismissal.[4]

---

[4] Plaintiffs request, in a passing footnote, that if the Court concludes they have not set forth a prima facie showing of specific personal jurisdiction, they be allowed to conduct limited jurisdictional discovery pertaining to Fenix Internet's contacts with Illinois. (Dkt. 34 at 9 n.1.) Even if this request were properly presented—and a request buried in a footnote is not proper—the Court would reject it. Plaintiffs appear to misunderstand the standard for granting jurisdictional discovery. As Fenix Internet points out in reply, "[a]t a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction *before* discovery should be permitted." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) (emphasis added). In other words, Plaintiffs must *first* set forth a prima facie showing of jurisdiction to warrant discovery—not attempt to use discovery to establish a prima facie case of personal jurisdiction in the first instance. As discussed above, Plaintiffs have failed to establish such a colorable or prima facie showing of personal jurisdiction. Further, Plaintiffs do not provide any details of what kinds of discovery they would seek, or how that discovery would controvert the facts in the Taylor declaration, which Plaintiffs completely ignore in their briefing. In short, Plaintiffs have given the Court no reason to believe that jurisdictional discovery is warranted or would reveal facts that dispute the statements in Taylor's sworn affidavit.

As a result of the lack of personal jurisdiction, the Court need not reach the parties' arguments regarding whether Plaintiffs have stated a claim under Federal Rule of Civil Procedure 12(b)(6), or the arguments in the motion to dismiss for forum non conveniens (Dkt. 28). In addition, Plaintiffs' arguments in the motion to remand or in the alternative for leave to conduct jurisdictional discovery (Dkt. 50) relate to different jurisdictional issues under CAFA, which the Court need not reach in light of the lack of personal jurisdiction.

Although Plaintiffs have already amended their complaint several times, this is the first time the Court is addressing the merits of the personal jurisdiction issue. The Court will therefore give Plaintiffs leave to file an amended complaint within 30 days. As noted above, Plaintiffs should only file a further amended complaint if they have a good faith basis to believe they can name a proper defendant and if they can satisfy personal jurisdiction and venue as to such defendant, especially considering the forum selection clause issues discussed in the forum non conveniens briefing.

## Conclusion

For the foregoing reasons, the motion to dismiss for lack of personal jurisdiction (Dkt. 26) is granted. The motion to dismiss for forum non conveniens (Dkt. 28) and the motion to remand or in the alternative to conduct jurisdictional discovery (Dkt. 50) are denied as moot. Fenix Internet is dismissed as a defendant for lack of personal jurisdiction. Plaintiffs have 30 days from the date of this Order to file a Third Amended Complaint, if they believe they have grounds to do so.

ENTERED: 6/5/24

_____
Nancy L. Maldonado
United States District Court Judge