## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

YOLENE REYES and ALEXANDRA KESICH, individually and on behalf of similarly situated individuals, )))) 

       *Plaintiffs*,        )     No. 21-cv-6624

            v.        )     Hon. Nancy L. Maldonado

FENIX INTERNET LLC, a Delaware limited liability company, and CYBERTANIA, INC., a Florida domesticated corporation, )))))

       *Defendants.*

## THIRD AMENDED CLASS ACTION COMPLAINT

Plaintiffs Yolene Reyes and Alexandra Kesich[1] ("Plaintiffs") both individually and on behalf of other similarly situated individuals, bring this Third Amended Class Action Complaint against Defendants, Fenix Internet LLC, a Delaware limited liability company, and Cybertania, Inc., a Florida domesticated corporation that was previously, and at all times relevant to this action, was an Illinois corporation that was subsequently domesticated in Florida (together **"Defendants"**), for their respective violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(c) ("BIPA"). Plaintiffs allege the following based on personal knowledge as to Plaintiffs' own respective acts and experiences, and as to all other matters, upon information and belief, including an investigation conducted by their attorneys.

## INTRODUCTION

1.     "Biometrics" refers to a "biology-based set[s] of measurements." *Rivera v. Google*

---

[1] Plaintiff Alexandra Kesich was, at all times prior in this action, identified in prior complaints as "Jane Doe." She is being identified by name in this Third Amended Complaint per the Court's June 5, 2024 Memorandum Opinion and Order [Dkt. 61].

*Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017). Specifically, "biometrics" are "a set of measurements of a specified physical component (eye, finger, voice, hand, face)." *Id.* at 1296.

2.      BIPA was enacted in 2008 in order to safeguard individuals' biometrics as the result of the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. BIPA is codified as Act 14 in Chapter 740 of the Illinois Compiled Statutes.

3.      As set forth in BIPA, biologically unique identifiers, such as a person's unique facial geometry, cannot be changed. 740 ILCS 14/5(c). The inalterable nature of biologically unique identifiers presents a heightened risk when an individual's biometrics are not protected in a secure and transparent fashion. 740 ILCS 14/5(d)–(g).

4.      As a result of the need for enhanced protection of biometrics, BIPA imposes various requirements on private entities that collect or maintain individuals' biometrics, including facial scans.

5.      Among other things, BIPA seeks to regulate "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g). BIPA thus applies to entities that interact with two forms of biometric data: biometric "identifiers" and biometric "information." 740 ILCS 14/15(a)-(e).

6.      BIPA defines a "biometric identifier" as any personal feature that is unique to an individual, including fingerprints, voiceprints, palm scans and facial geometry. "Biometric identifiers" are physiological, as opposed to behavioral, characteristics. BIPA's text provides a non-exclusive list of protected "biometric identifiers," including "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

7.      "Biometric information" is defined by BIPA as "any information, regardless of how

it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*. This definition helps ensure that information based on a biometric identifier that can be used to identify a person is covered by BIPA. Collectively, biometric identifiers and biometric information are known as "biometrics."

8.      In BIPA, the Illinois General Assembly identified five distinct activities that may subject private entities to liability:

   a.    possessing biometrics without a proper policy publicly available, 740 ILCS 14/15(a);

   b.    collecting, capturing, purchasing, receiving, or obtaining biometrics, 740 ILCS 14/15(b);

   c.    selling, leasing, trading, or profiting from biometrics, 740 ILCS 14/15(c);

   d.    disclosing or disseminating biometrics, 740 ILCS 14/15(d); and

   e.    failing to secure biometric data using a reasonable standard of care, 740 ILCS 14/15(e).

9.      As the Illinois Supreme Court has held, BIPA "codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Entm't Corp*., 2019 IL 123186, ¶ 33, 129 N.E.3d 1197, 1206 (Ill. 2019). The Illinois Supreme Court further held that when a private entity fails to comply with BIPA "that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach." *Id.*

## PARTIES

10.      Defendant Fenix Internet LLC ("Fenix") is a Delaware limited liability company that, at all times relevant herein, and as more fully described below, both purposefully availed itself of the privilege of conducting business in Illinois, and purposefully directed its activities at issue in this action at the members of the proposed Class and Subclasses, all of whom are Illinois

3

residents.

11.     At all times relevant to this action, Defendant Fenix maintained its principal office at 345 North Canal Street, Chicago, Cook County, Illinois.

12.     At all times relevant, Defendant Fenix's parent entity, Fenix International Limited,[2] has identified Defendant Fenix in Fenix International Limited's required "Annual Report and Financial Statements" (filed with Companies House[3]) as Fenix International Limited's wholly controlled ("100% Held Direct") subsidiary.

13.     Defendant Fenix's parent entity, Fenix International Limited, identified Defendant Fenix in its "Annual Report and Financial Statements for the Year Ended 30 November 2020" (filed with Companies House on May 7, 2021) as a company subsidiary on November 30, 2020, and stated therein that Defendant Fenix maintained its office at 345 North Canal Street, Chicago, Illinois, USA.

14.     Defendant Fenix's parent entity, Fenix International Limited, identified Defendant Fenix in its "Annual Report and Financial Statements for the Year Ended 30 November 2021" (filed with Companies House on August 31, 2022) as a company subsidiary on November 30, 2021, and stated therein that Defendant Fenix maintained its office at 345 North Canal Street, Chicago, Illinois, USA.

15.     Defendant Fenix maintaining its principal office at 345 North Canal Street, Chicago, Cook County, Illinois is entirely consistent with multiple other public filings with Companies House by Fenix International Limited, which identify 345 North Canal Street, Suite C-202, Chicago, Illinois as the registered and correspondence address for Leonid Radvinsky, who,

---

[2] Fenix International Limited is the entity that owns and operates the OnlyFans.com platform.
[3] Companies House is the United Kingdom's registrar of companies and is an executive agency of the UK Government.

as is more fully alleged below, is Fenix International Limited's majority shareholder, and one of that company's directors.

16.     Defendant Cybertania, Inc. ("Cybertania") is presently a Florida domesticated corporation. However, at times relevant to this action, Cybertania was an Illinois corporation that was created and existed under Illinois law (Illinois Secretary of State corporate file number 603725), and it maintained both its registered and principal offices in Cook County, Illinois.

17.     More specifically with respect to Defendant Cybertania, it was initially formed as an Illinois corporation on or about March 1, 1999, and it retained its registered and principal offices in Cook County, Illinois throughout its existence as an Illinois corporation from March 1, 1999 to August 13, 2021 (as more fully described below).

18.     On or about November 5, 2020, Cybertania filed "Articles of Domestication-Foreign Corporation Domesticating to Florida" (its "Articles") with the Florida Department of State, Division of Corporations, whereby it sought to change its state of domestication from Illinois to Florida.

19.     In its Articles (which were executed by its president, Leonid Radvinsky, on or about October 27, 2020 and thereafter filed as Florida public records), Cybertania identified itself as an Illinois corporation formed on March 1, 1999, and represented that "The domestication corporation is a foreign corporation and the domestication was approved in accordance with its [Illinois'] organic law."

20.     Contrary to this representation, however, Defendant Cybertania never filed any "Statement of Conversion" or "Articles of Merger, Consolidation, or Exchange" (or any such other similar documents) with the Illinois Secretary of State to change its status in Illinois as an Illinois corporation.

21.     As such, Cybertania additionally continued in its parallel (and original) existence as an Illinois corporation through August 13, 2021, at which time it was involuntarily dissolved as an Illinois corporation by the Illinois Secretary of State for its failure to timely file its 2021 annual report with the Illinois Secretary of State.

22.     As such, Defendant Cybertania existed as an Illinois corporation with both its registered and principal offices located in Cook County, Illinois from March 1, 1999 through August 13, 2021, and it continues to exist in an unbroken and continuous manner as a Florida domesticated corporation.

23.     Plaintiff Alexandra Kesich is, and at all times relevant to this action, was a resident of Cook County, Illinois. As noted in the preceding footnote, Plaintiff Kesich was previously identified in this action as Plaintiff "Jane Doe."

24.     Plaintiff Yolene Reyes is, and at all times relevant to this action, was a resident of Cook County, Illinois.

## JURISDICTION AND VENUE

25.     This case has been removed to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) *et seq.*, because this case is a class action in which Defendant Fenix Internet has stated: the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are greater than 100 putative class members; at least one putative class member is a citizen of a state other than Defendant; and none of the exceptions under subsection § 1332(d) apply.

26.     This Court has personal jurisdiction over Defendants under 735 ILCS 5/2-209(a)(1) and (7) in accordance with the Illinois Constitution and the Constitution of the United States, because Defendants, by themselves and through their agents, have transacted business in this state

(including Defendant Cybertania operating as an Illinois corporation with its registered and principal offices located in Cook County, Illinois, and Defendant Fenix operating with its principal office in Cook County, Illinois), and made or performed contracts or promises substantially connected with this state, as more fully described elsewhere in this Third Amended Complaint, and Plaintiffs' claims herein arise out of Defendants' actions in this state, as Defendant Fenix Internet profited from the collection of Plaintiffs' biometrics in this state and Defendant Cybertania received, managed, transmitted, and stored Plaintiff Kesich's facial biometrics in this state.

27.    Venue is proper in this District because Plaintiffs reside in this District and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## COMMON ALLEGATIONS OF FACT

28.    Onlyfans.com is a social media website and online platform that features content created by "Content Creators" for access by "Fans" who subscribe to access the creators' content.

29.    The Onlyfans.com social media website and online platform is owned and operated by Fenix International Limited, a U.K. entity, of which the majority shareholder (with more than 70% of the shares) and director is Leonid Radvinsky. In this capacity, Mr. Radvinsky exercises complete control over Onlyfans.com's operations.

30.    While content creators can make almost any type of content available for their fan subscribers to access, Onlyfans.com is primarily known for featuring adult content from content creators that visitors to the website can purchase either through a monthly subscription to a specific content creator or by purchasing specific or personally requested content.

31.    Onlyfans.com features over 2 million content creator accounts and over 130 million user accounts globally, with the vast majority of its website users located in the United States, including in Illinois.

32.     Onlyfans.com has recorded massive income from its operations, with over \$1.2 billion in purchases made by visitors from its content creators just in 2020.[4]

33.     Because of the adult nature of the majority of the content featured on Onlyfans.com, to become a content creator on Onlyfans.com, an individual must go through a registration process which includes verification of their age and identity.

34.     Specifically, to be approved as a content creator, Onlyfans.com requires that a potential content creator submit a photo of a government ID, in addition to a selfie of them holding the government ID. After submitting their information and required photos, content creators are verified within the next 24 to 48 hours.

35.     In addition to the initial verification process, Onlyfans.com also utilizes a "Fast Automated Verification" process for verifying content creators' age and/or identity following the initial verification.

36.     When a content creator uses the automated verification process, they are forwarded to a web portal on the Onlyfans.com website that asks them to submit a selfie of their face. They are then asked to submit a picture of the front and back of a valid government identification document that features their face.

37.     The automated verification process works by extracting the facial biometrics of the user from their selfie to create a geometric profile of their face and comparing it to the biometric profile that it extracts from the user's ID document to see if they match.

38.     The selfies that are submitted to Onlyfans.com by content creators are transmitted to and received by Onlyfans.com's online storage provider, Defendant Cybertania. (www.cybertania.com.) Thereafter, the selfies are processed by biometric verification vendor

---

[4] www.businessinsider.com/onlyfans-lockdown-boom-transactions-hit-24b-revenue-up-553-2021-4.

Ondato (www.ondato.com).

39.     During the summer of 2021, after receiving complaints globally about a lack of sufficient efforts to ensure that content creators were not minors, Onlyfans.com undertook a mass age/identity verification campaign that required many of its content creators that were selling paid content on its Onlyfans.com platform to re-verify their age and identity through its automated biometric identity verification process. Content creators such as Plaintiff Kesich and Plaintiff Reyes had to undergo the verification process before they could sell any more content to their subscriber "Fans" or even withdraw any fund balances on their Onlyfans.com account.

40.     Further, together with its efforts to verify that its content creators are not minors, Onlyfans.com also utilizes an automated Artificial Intelligence ("AI") content review system provided by SightEngine (www.sightengine.com), to "review all uploaded content" to ensure that any uploaded content does not feature a minor.[5]

41.     Defendant Fenix is the entity through which all purchases on Onlyfans.com are made and it is also the entity that distributes all funds collected by Onlyfans.com to its content creators.

42.     As such, every time a subscriber purchased content created by a content creator who had to verify their identity, Defendant Fenix not only processed the purchase transaction, but also directly profited from the transaction.

43.      Indeed, Defendant Fenix's sole source of revenue was the purchase transactions made through it and the reimbursements to content creators that it remitted, both of which required and could not occur without the content creators' identities being verified through the collection of their biometrics.

---

[5] https://onlyfans.com/statement

44.     Critically, through at least July 2020, if not later, Defendant Fenix operated and maintained its principal office at 345 North Canal Street, Chicago, Cook County, Illinois, as evidenced by – among other reliable business records that were both created and maintained by Defendant Fenix – its own corporate website shown below:



(https://web.archive.org/web/20200726121941/http://fenixinternet.net:80/).

45.     Further, from 2020 to the present, fenixinternet.net's website has been hosted and operated from a server located in Chicago, Illinois.

46.     In addition, all of the content that was featured on Onlyfans.com was stored on servers owned and operated by Defendant Cybertania, and it was through Cybertania's servers that Plaintiffs' and the other class members' respective biometrics were processed.

47.     Defendant Fenix paid Defendant Cybertania to operate as the data storage vendor for Onlyfans.com, and at all times had access to Defendant Cybertania's servers and the information contained thereon, including but not limited to the selfies submitted by content creators like Plaintiff.

48.     Similarly, Ondato and Sightengine were paid by Defendant Fenix to provide

10

biometric verification services.

49.    As such, Defendant Fenix unlawfully profited from the facial biometrics obtained from Plaintiffs and the other members of the Class in violation of Section 15(c) of BIPA.

50.    Further, while Defendant Cybertania possessed Plaintiffs' and the other proposed class members' respective biometrics, at no point did it have a publicly available policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information. This violates Section 15(a) of BIPA.

## FACTS SPECIFIC TO PLAINTIFF KESICH

51.    Kesich originally completed the registration and identity verification process to become a content creator on Onlyfans.com in May 2020 while located in Illinois.

52.    After completing the registration and identity verification process, Kesich posted paid content available for purchase on Onlyfans.com that subscribers to Onlyfans.com began to purchase, including subscribers that were located in Illinois and purchased Kesich's content from Illinois.

53.    Shortly after becoming a verified content creator, Kesich began to regularly request disbursements of the funds that she earned from Onlyfans.com, including funds obtained from individuals who purchased her content from Illinois.

54.    Thereafter, in July 2020 and again in August 2020, Plaintiff had to re-verify her age and identity through Onlyfans.com utilizing Ondato's biometric verification system while located in Illinois. Kesich was required to go through the verification process to post any content made available for purchase and to withdraw any funds.

55.    During the verification process, Kesich had to take a selfie of her face along with a picture of her Illinois driver's license, which were transmitted to Onlyfans.com's storage vendor

located in Chicago, Defendant Cybertania. Thereafter, the selfie and driver's license picture were sent to Ondato for processing.

56.     Both Defendant Cybertania and Ondato were paid by Defendant Fenix to transmit, store, and process Kesich's facial biometrics.

57.     Throughout 2020, whenever any subscriber purchased Kesich's content, including the subscribers located in Illinois, they paid for the content directly to Defendant Fenix, and Kesich was in turn reimbursed solely and directly by Defendant Fenix. Indeed, Kesich's pay stubs and 1099 tax forms featured "Fenix Internet, LLC" and were sent to her Illinois residential address.

58.     Both at the time that Kesich had to provide her facial biometrics in order to post her paid content on onlyfans.com and thereafter, when she was paid by Defendant Fenix for said content in May 2020, July 2020, and August 2020, Defendant Fenix was wholly located, headquartered, and operated from Chicago, Cook County, Illinois.

59.     Both at the time that Kesich had to provide her facial biometrics in order to post her paid content on onlyfans.com and thereafter, when she was paid by Defendant Fenix for said content in May 2020, July 2020, and August 2020, Defendant Fenix had access to and control over Onlyfans.com's data storage provided by Defendant Cybertania, including the biometric verification data that was provided by Ondato.

## FACTS SPECIFIC TO PLAINTIFF YOLENE REYES

60.     In or around February of 2021, while located within the state of Illinois, Plaintiff Reyes completed the registration and identity verification process to become a content creator on Onlyfans.com.

61.     On numerous occasions in 2021 after becoming a verified content creator while Reyes was located within Illinois, she was required to re-verify her age/identity through the

12

automated verification process on Onlyfans.com utilizing Ondato's biometric verification system. Reyes was required to go through the verification process to post any content made available for purchase and to withdraw any funds, including funds that were provided by subscribers who made purchases from Illinois.

62.     During the verification process, Reyes had to take a selfie of her face along with a picture of her driver's license, which were transmitted to Onlyfans.com's storage vendor Defendant Cybertania. Thereafter, the selfie and driver's license picture were sent to Ondato for processing.

63.     Both Defendant Cybertania and Ondato were paid by Defendant Fenix to transmit, store, and process Reyes' facial biometrics.

64.     Whenever any subscriber purchased Reyes' content, including the subscribers who purchased her content from Illinois, they paid for the content directly to Defendant Fenix, and Reyes was in turn reimbursed solely and directly by Defendant Fenix. Indeed, Reyes' pay stubs and 1099 tax forms featured "Fenix Internet, LLC" and were sent to her Illinois residential address.

65.     At the time that Reyes had to provide her facial biometrics in order to post her paid content and was paid by Defendant Fenix beginning in February 2021, Fenix had access to and control over Onlyfans.com's data storage provided by Defendant Cybertania, including the biometric verification data that was provided by Ondato.

## CLASS ALLEGATIONS

66.     Plaintiffs bring this action on their own behalf and on behalf of a class and two subclasses of similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure as defined below:

**Class**: All Illinois residents who were content creators on Onlyfans.com and whose content was paid for through Fenix Internet and who received monetary disbursements from Fenix Internet and had to go through a biometric verification process during the applicable limitations period.

**Subclass**: All Illinois residents who were content creators on Onlyfans.com and whose content was paid for through Fenix Internet and who received monetary disbursements from Fenix Internet and had to go through a biometric verification process before September 30, 2020.

**Illinois Purchase Subclass**: All Illinois residents who were content creators on Onlyfans.com and whose content was paid for through Fenix Internet and who received monetary disbursements from Fenix Internet for content purchased by individuals located in Illinois and had to go through a biometric verification process before September 30, 2020.

67.     Excluded from the Class and Subclasses are any members of the judiciary assigned to preside over this matter; any officer or director of Defendants; and any immediate family member of such officer or director.

68.     There are thousands of members of the Class and Subclasses, making the members of the Class and Subclasses so numerous that joinder of all members is impracticable. Although the exact number of members of the Class and Subclasses is currently unknown to Plaintiffs, the members can be easily identified through Defendants' records.

69.     Plaintiffs' claims are typical of the claims of the Class and Subclasses they seek to represent because the basis of Defendants' liability to Plaintiffs and the Class and Subclasses is substantially the same, and because Defendant's conduct has resulted in similar injuries to Plaintiffs and to the other members of the Class and Subclasses.

70.     There are many questions of law and fact common to the claims of Plaintiffs and the Class and Subclasses, and those questions predominate over any questions that may affect individual members of the Class and Subclasses. Common questions for the Class and Subclasses include, but are not limited to, the following:

a.   Whether Defendants were in possession of Plaintiffs' and the other Class and Subclass members' facial biometric identifiers or biometric information;

b.   Whether Defendant Fenix profited from the Class members' facial biometrics;

c.   Whether Defendant Cybertania failed to maintain a publicly available biometric data retention and deletion policy;

d.   Whether Defendants' conduct violates BIPA;

e.   Whether Defendants' BIPA violations are willful or reckless; and

f.   Whether Plaintiffs and the other members of the Class and Subclasses are entitled to damages and injunctive relief.

71.   Absent a class action, most members of the Class and Subclasses would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

72.   Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class and Subclasses they seek to represent. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and Subclasses and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class and Subclasses.

73.   Defendants have respectively acted and failed to act on grounds generally applicable to Plaintiffs and the other members of the Class and Subclasses, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the

15

Class and Subclasses and making injunctive or corresponding declaratory relief appropriate for the Class and Subclasses as a whole.

## COUNT I
### Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(a)
### (On behalf of Plaintiff Kesich and the Subclasses against Defendant Cybertania)

74.     Plaintiff Kesich incorporates the foregoing allegations as if fully set forth herein.

75.     Defendant Cybertania is a private entity under BIPA.

76.     As discussed above Plaintiff Kesich and the other members of the Subclasses have had their "biometric identifiers," namely their facial biometrics, collected, captured, stored, and otherwise possessed by Defendant Cybertania within Illinois as a result of interacting with Onlyfans.com's biometric identity verification process and automated content review system.

77.      Section 15(a) of BIPA requires any entity in possession of biometric identifiers or biometric information to "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

78.      Though Defendant Cybertania has come into possession of Plaintiffs' and other members of the Subclasses facial biometric identifiers and/or information within Illinois, it has failed to make publicly available any policy addressing its biometric retention and destruction practices.

79.     As a result, Defendant Cybertania has violated Section 15(a) of BIPA.

80.     Defendant Cybertania, which at all times relevant herein was an Illinois corporation with its principal and registered offices located in Cook County, Illinois, knew, or was

reckless in not knowing, that its utilization of biometric identity verification and content review processes which collected Plaintiffs and thousands of other Illinois residents' facial biometrics would be subject to Section 15(a) of BIPA, a statutory provision passed in 2008, yet failed to comply with the statute.

81.     BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)-(2).

82.     Defendant Cybertania's violations of Section 15(a) of BIPA, which has been in effect since 2008, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant Cybertania negligently failed to comply with Section 15(a) of BIPA.

83.     Accordingly, with respect to Count I, Plaintiff, both individually and on behalf of the proposed Subclasses, prays for the relief set forth below.

### COUNT II
**Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(c)**
**(On behalf of Plaintiffs and the Class against Defendant Fenix Internet)**

84.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

85.     Defendant Fenix is a private entity under BIPA.

86.     As discussed above Defendant Fenix paid Cybertania and Ondato to transmit, store, and process Plaintiffs' facial biometrics.

87.     Furthermore, Defendant Fenix had access to and control over Onlyfans.com's data storage, including the biometric verification data that was provided by Ondato.

88.     Section 15(c) of BIPA prohibits any private entity in possession of biometrics, such as Defendant, from selling, leasing, trading, or otherwise profiting from such biometrics. 740 ILCS

14/15(c).

89.     As alleged herein, Defendant Fenix profited from Plaintiffs and the other Class members' facial biometrics, as the content for which "fans" paid Defendant Fenix and from which Defendant Fenix obtains all of its revenue, was only made available for sale after Plaintiffs and the other Class members provided their facial biometrics.

90.     Defendant Fenix could not have obtained the profits that it did and remitted the funds that it did to Plaintiffs and the other Class members if they did not verify their identities through their facial biometrics.

91.     Accordingly, Defendant Fenix has violated Section 15(c) of BIPA.

92.     Defendant Fenix knew, or was reckless in not knowing, that its biometric identity verification process and automated content review system would be subject to the provisions of Section 15(c) of BIPA, a statutory provision in effect since 2008, as it was located in, headquartered, and operated in Chicago, Cook County, Illinois through at least July 2020, and obtained and remitted profits from thousands of Illinois individuals, yet failed to comply with the statute.

93.     BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)-(2).

94.     Defendant Fenix's violations of Section 15(c) of BIPA, a statutory provision that has been in effect since 2008, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant Fenix negligently failed to comply with Section 15(c) of BIPA.

95.     Accordingly, with respect to Count II, Plaintiffs, both individually and on behalf of

the proposed Class, pray for the relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class and Subclasses, respectfully request that this Court enter an Order:

    a.  Certifying the Class and Subclasses as defined above, appointing Plaintiffs to represent the Class, Plaintiff Kesich to represent the Subclasses, and the undersigned as class counsel;

    b.  Declaring that Defendants' actions, as set forth herein, violate BIPA;

    c.  Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiffs and the Class and Subclasses by requiring Defendants to comply with BIPA;

    d.  Awarding statutory damages of $5,000 for each willful and/or reckless violation of the BIPA, pursuant to 740 ILCS 14/20(2);

    e.  Awarding statutory damages of $1,000 for each negligent violation of the BIPA, pursuant to 740 ILCS 14/20(1);

    f.  Awarding reasonable attorneys' fees, costs, and other litigation expenses, pursuant to 740 ILCS 14/20(3);

    g.  Awarding pre- and post-judgment interest, as allowable by law; and

    h.  Awarding such further and other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Dated: July 5, 2024                         Respectfully submitted,

                                            YOLENE REYES and ALEXANDRA
                                            KESICH, individually and on behalf of
                                            similarly situated individuals

                                    By:     /s/ *Eugene Y. Turin*
                                            *One of Plaintiffs' Attorneys*

Eugene Y. Turin
Colin P. Buscarini
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
cbuscarini@mcgpc.com

*Attorneys for Plaintiffs and the Putative Class*